### JOHNSON *v.* McKAY, executor.

1. A description in a mortgage of a tract of land as the " Zachariah Emerson place, part of lots No. 125 in the 11th district " in a named county, " one part number not known," and containing a specified number of acres, is not so indefinite and uncertain as to render the mortgage void.    Extrinsic evidence may be resorted to to identify the land.

2 The same is true of a description of a tract of land as " The Thomas Bazemore place," containing a given number of acres and adjoining lands of named persons.

3. Where land is described as the Zachariah Emerson place, " part of lots number 125 " in a given district, " one part number not known," and it appears that no part of the place named is embraced in lot 125, the lot number may be rejected as surplusage, under the maxim *falsa demonstratio non nocet.*

4. Where extrinsic evidence is necessary to identify land described in a mortgage which has been foreclosed, and a claim interposed to the levy of the

mortgage execution, the burden is on the plaintiff in execution to properly identify the land by extrinsic proof.

5. Inasmuch as there is great doubt whether this burden was carried in the present case, and, if so, whether the prima facie case made by the plaintiff was not rebutted, the judgment granting the claimant a second new trial will not be disturbed.

Submitted November 26,—Decided December 10, 1903.

Levy and claim. Before Judge Lewis. Jones superior court. December 15, 1902.

*Hardeman & Moore* and *R. N. Hardeman*, for plaintiff, cited, as to sufficiency of description, *Ga. Rep.* 78/539; 83/645; 94/475.

*Johnson & Johnson*, contra, cited Civil Code, § 2724; *Ga. Rep.* 10/74; 67/97, 102; 70/756; 81/41, 42; 100/492; 107/281, 282; 116/351, 354, 355; Devlin on Deeds, § 1010.

Cobb, J. On October 1, 1895, Mrs. Julia McKay executed to J. C. Johnson a mortgage upon land described as follows: "All that tract of land in Jones county, Georgia, containing one hundred and fifty-three (153) acres, known as the Zachariah Emerson place, part of lots No. one hundred and twenty-five (125) in the eleventh (11) district, one part No. not known." Also: "The Thomas Bazemore place, containing one hundred and ninety-six (196) acres, more or less, joining the lands of Sarah Emerson, Elisha Owens, Madison T. Bazemore, and H. D. McKay." The mortgage was foreclosed and the execution was levied. The execution followed the description in the mortgage. H. A. McKay, as executor of the will of George W. F. McKay, interposed a claim to the property, and at the trial the property was found subject. The presiding judge, Hon. F. C. Foster, granted a motion for a new trial, filed by the claimant. At the second trial the property was again found subject, and another new trial was granted the claimant by Hon. H. G. Lewis, who presided at the trial, upon a motion which contained the grounds that the verdict was contrary to law and the evidence, and also certain special grounds. At both trials the claimant introduced in evidence the record of a suit for land, and of the decree therein, brought by Mrs. Julia McKay against George W. F. McKay, in which title to certain land was decreed to be in the defendant in the suit. It is claimed that this decree covered the land now in controversy. The order of Judge Lewis granting a new trial was as follows: "It is ordered

by the court that the verdict and judgment complained about be set aside and a new trial granted, because the evidence shows that the land claimed is covered and embraced by and in the decree rendered in case of Julia McKay·vs. G. W. F. McKay, which was used in evidence; and because the lands claimed were not properly specified and described in the mortgage so as to make them capable of identification, and uncontradicted evidence showing that no part of lot 125 described in the mortgage was included therein." To the granting of this order the plaintiff in execution excepted.

1–3. We are constrained to differ with his honor of the trial court in his opinion that the description of the two tracts of land in the mortgage was so uncertain and indefinite as to render the mortgage void. The description standing alone, unaided by extrinsic evidence, is unquestionably insufficient. But the rule applicable in such cases is, that is certain which is capable of being made certain; and the description will be sufficient if it affords means of identifying and ascertaining the land intended to be conveyed. See Martindale on Conveyancing, § 87; *Andrews* v. *Murphy*, 12 *Ga.* 431; 2 Devlin on Deeds (2d ed.), § 1012. A general description, such as the Emerson place, or the Thomas Bazemore place, is sufficient. *McAfee* v. *Arline*, 83 *Ga.* 645 (a); *Polhill* v. *Brown*, 84 *Ga.* 338 (2); 2 Devlin on Deeds (2d ed.), §§ 1012–1013. In such a case parol evidence may be resorted to to show what land was intended to be conveyed. See *Broach* v. *O'Neal*, 94 *Ga.* 474 (3); *Derrick* v. *Sams*, 98 *Ga.* 397 (1); 3 Wash. Real Prop. (6th ed.), § 2320; Martindale on Conveyancing (2d ed.), § 88. It is true, as stated in the judge's order granting a new trial, that the uncontradicted evidence shows that the Emerson place did not embrace any part of lot number 125. But this does not vitiate the mortgage. The general description of the property as the Emerson place was sufficient, and a particular description repugnant to this general description is to be treated as surplusage, under the maxim *falsa demonstratio non nocet.* Mart. Conv. (2d ed.) § 96; 3 Wash. Real Prop. (6th ed.) §§ 2317, 2321; *Harris* v. *Hull*, 70 *Ga.* 831 (1); *Boggess* v. *Lowrey*, 78 *Ga.* 539; *Rogers* v. *Rogers*, 78 *Ga.* 688 (2); *Polhill* v. *Brown*, 84 *Ga.* 338 (2); 2 Dev. Deeds (2d ed.), § 1016. These authorities are directly in point, and show that a mere error in the number of the lot will not vitiate the mort-

gage, there being a general description therein from which the property can be identified. .Had the property been described solely by.lot number, which was given incorrectly, reformation of the instrument would have been necessary, but here the lot number may be wholly disregarded and still the description be sufficient.

4–5.   In order, however, for the plaintiff.to make out a prima facie case it was necessary for him to make the description certain by extrinsic evidence, and to show that the defendant in execution was in possession of or had title to the particular property at the time the mortgage was given.   The evidence as to the possession at the date of the mortgage was decidedly conflicting, the preponderance apparently being in favor of the view that the mortgagor was not in possession at that date.   The uncontradicted evidence showed that Mrs. Julia McKay was the widow and sole heir at law of her deceased husband, H. D. McKay, and that he acquired title to the Bazemore place by deed in 1848, and to the Emerson place in the same manner in 1854.   These deeds describe the respective tracts in substantially the same manner as they are described in the mortgage.   It was therefore necessary for the plaintiff in execution to resort to parol evidence to identify the two places.   We have studied most carefully and anxiously the evidence relied on for this purpose; and while we are not prepared to say that it was absolutely impossible for the jury to ascertain what land was intended to be covered by the mortgage, the identity of the two tracts was certainly involved in much uncertainty and doubt.   A half century had elapsed since the purchase of the property by H. D. McKay and since these two tracts, doubtless well known at the time, were combined with other property belonging to the purchaser into a larger place thenceforward to be known as the McKay land.   Old landmarks had been forgotten or obliterated, and coterminous owners had changed.   There was but one witness that knew anything about the old tracts; and while he spoke with a great deal of confidence, an analysis of his testimony shows that he could not with absolute certainty indicate the lines.   A plat of the tracts, called the Chiles survey, was introduced in evidence, but the surveyor testified that he got his information as to the lines from the witness above referred to.   As stated above, we do not say that the jury might not have found that this survey was correct; but certainly the evidence is not so

definite and certain as to justify us in holding that the judge erred in awarding a second new trial. Viewing the evidence as a whole, it was perhaps better for both parties that a new trial should have been granted.

As the case is to be tried again, we deem it proper to state our views with reference to the decree rendered in the suit of Julia McKay v. G. W. F. McKay. The suit was filed March 25, 1895; the mortgage was executed on October 1, 1895; and the decree was rendered October 19, 1896. If the doctrine of lis pendens was applicable, Johnson, the mortgagee, was bound simply by the description of the property in the declaration, and if that did not embrace the property mortgaged, he would be protected, without regard to whether the decree described the property or not, and without regard to whether the decree would be void because covering property not described in the declaration. As stated above, the evidence shows that H. D. McKay acquired the Bazemore place by deed executed in 1848, and the Emerson place by deed made in 1854. The declaration describes the land sued for as 1143 acres adjoining the lands of certain parties, and lying on the waters of Town creek, and obtained by H. D. McKay "in the year 1856, under an agreement made between his mother, Sarah McKay, and the defendant Geo. W. F. McKay and himself." The agreement referred to was in evidence, and in that the land obtained thereunder by H. D. McKay was described as set out in the declaration. This land may or may not have embraced the Emerson and Bazemore tracts. There was a survey of the lands supposed to have been included in the suit against G. W. F. McKay by Julia McKay, and this survey seems to embrace the two tracts in controversy. A witness for the claimant testified positively that the two tracts were involved in the suit, though the witness admitted that he was not acquainted with the inside lines of the tracts. If these two tracts were embraced in the agreement and involved in the suit, this could be explained only on the hypothesis that the tracts were bought for H. D. McKay in 1848 and 1854, and afterwards by consent of all parties included in the agreement between the two McKay sons and their mother. In view, however, of the uncertainty whether these two tracts were involved in the suit and the agreement, and also of the uncertainty whether the two tracts were sufficiently identified, we will

let the second grant of a new trial stand, in order that these two questions may be again submitted to the jury.    These are the controlling questions.   On another trial the jury will be instructed to find, first, whether the plaintiff in execution has carried the burden resting on him by identifying with reasonable certainty the Emerson and Bazemore tracts; and if so, it will be for them to say whether the claimant has rebutted this prima facie case by showing that the tracts in question were involved in the suit between Julia McKay and G. W. F. McKay.    There are the two vital questions, and we think the ends of justice will be best met by allowing the case to go again to the jury and be heard by them with their minds specially directed to the two issues.    The propriety of affirming the second grant of a new trial in this case is made manifest when the fact is considered that the case has been tried by two judges, each a lawyer of ability and experience, and each has emerged from the trial, not only with doubt as to whether the result is in accord with justice and the law, but doubt of such grave and controlling nature as to constrain the setting aside of the verdicts.    No possible harm can come from another trial. Serious injury and irremediable wrong might be the result of a reversal of the judgment.

*Judgment affirmed.    All the Justices concur.*