## AIKEN et al. v. WALLACE et al.

1. Where a deed sufficiently described land intended to be conveyed, but for more particular description referred to a plat recorded on the general records of the county, the deed was not inadmissible in evidence because the plat was not produced or its absence accounted for.

2. A deed recites that it conveys "All that lot of land known as the 'Hotel Reservation' in King City on the Island of St. Simons, in said County of Glynn, and more particularly and perfectly described on the map and plan of said King City shown in Record Book 'KK,' page 593, of the General Records of said County, and being bounded on the North by Floyd street; on the South by Mallory street; on the East by lots 'G' and 'K' and twenty feet of a short alley; and on the West by high-water mark. Said above-described property conveying a portion of Page avenue as shown on the plan of said King City. To have and to hold the said described lot known as the Hotel Reservation unto her, the said party of the second part, her heirs and assigns, as aforesaid, in fee simple." The map referred to indicates a rectangular lot between defined lines, marked "Hotel Reservation," bounded on two sides by parallel streets, marked "Floyd street" and "Mallory street," and on another by certain lots and the end of a 20-foot alley, and fronting on another street marked "Page avenue," which runs at right angles to the two parallel streets, which also shows beyond Page avenue another line parallel to it, along which are written the words "High-water Mark—Beach Line." Such deed is to be construed as conveying land extending to high-water mark, and to include that portion of Page avenue which lies between the parallel streets above mentioned, when projected across Page avenue to the high-water mark.

3. The uncontradicted evidence showed title in the plaintiffs to that part of the land in dispute between high-water and low-water mark; and injunction being an appropriate remedy in order to afford adequate relief, it was erroneous to refuse to enjoin the defendants from erecting obstructions on that part of the land between high-water and low-water marks, as prayed.

4. There being an adequate remedy at law, injunction will not lie to compel the removal of an existing permanent structure in a street.

AUGUST 9, 1910.  REHEARING DENIED SEPTEMBER 20, 1910.

Petition for injunction.  Before Judge Parker.  Glynn superior court.  November 6; 1909.

The owners of "Retreat Plantation," a tract of land on the island of Saint Simons in the county of Glynn, carved out of it a smaller tract, which was laid off in separate lots, streets and alleys, and called "King City."  A map of it was executed on October 30, 1886, filed for record in the office of the clerk of the superior court on November 17, 1891, and recorded March 24, 1893.  Mrs. Bena Wallace purchased a part of the property and received a deed from the owners, dated September 12, 1896, and im-

mediately entered possession and made valuable improvements, consisting of houses and outhouses, used as a hotel and its appurtenances.    Lots in "King City" were sold both before and after the deed to Mrs. Wallace, but none to such of the plaintiffs as became purchasers of such lots until after the deed to Mrs. Wallace.    After having been in possession for a number of years, Mrs. Wallace extended her buildings in such manner as to encroach 5 feet on one of the streets called Mallory street, and all the way across another street called Page avenue, and undertook to construct a wharf extending from high-water mark of Saint Simons sound, opposite her improvements, across the beach and over the low-water mark to a place suitable for the landing of boats.    The plaintiffs, including the grantors of Mrs. Wallace, and F. D. Aiken and others, as owners of "Retreat Plantation" and certain lots in "King City," filed suit for injunction to prevent the construction of the wharf and the maintenance of the obstructions in the street.    On the interlocutory hearing the judge granted an order: "that the injunction prayed for be and the same hereby is denied, except that said defendants are hereby temporarily restrained and enjoined from constructing or maintaining the wharf-run, or pier complained of, over or upon any part of Page avenue as shown on the map of 'King City.' " The plaintiffs excepted.

   *Harry F. Dunwody* and *D. W. Krauss,* for plaintiffs.
   *Crovatt & Whitfield* and *A. D. Gale,* for defendants.
   ATKINSON, J.    1.    The deed under which Mrs. Wallace claimed title from the proprietors of King City contained the following: "All that lot of land known as the 'Hotel Reservation' in King City on the Island of St. Simons, in said County of Glynn, and more particularly and perfectly described on the map and plan of said King City shown in Record Book 'KK,' page 593, of the General Records of said County, and being bounded on the North by Floyd street; on the South by Mallory street; on the East by lots 'G' and 'K' and twenty feet of a short alley; and on the West by high-water mark.    Said above-described property conveying a portion of Page avenue as shown on the plan of said King City. To have and to hold the said described lot known as the Hotel Reservation unto her, the said party of the second part, her heirs and assigns, as aforesaid, in fee simple."    Objections were urged to its admission, as follows: " (a) That the said deed without having

accompanied with it to offer in evidence the map and plan referred
to as being recorded in Book 'KK,' page 593, was inadmissible and
irrelevant.  (b) That the said offered deed was not accompanied by
the map or plan of King City therein referred to, by which said
Hotel Reservation was clearly and specifically described.  (c) That
said alleged deed was void for lack of sufficient description of the
land conveyed, without the map and plat conveying same or proof
of the contents of such map.  (d) That, without such accompany-
ing map and plan as referred to, there was no sufficient description
of said 'Hotel Reservation' to authorize its introduction in evi-
dence even as color."   The description in the deed was sufficient
without the map, and the reference to the map for more particular
description of the property intended to be conveyed did not render
introduction of the map essential to the admissibility of the deed.

2.   The decision involved a construction of the deed referred to
in the first division.  It was insisted by the plaintiffs that the land
conveyed to Mrs. Wallace did not include any part of Page avenue,
nor extend to high-water mark on the shores of Saint Simons
sound, while the defendant urged that it embraced a part of Page
avenue and extended over to high-water mark.  It appeared from
aliunde evidence that the deed misrecited the cardinal points.  The
map was introduced by the plaintiffs.  It failed to recite the cardi-
nal points.  On the map was a space, rectangular in shape, desig-
nated "Hotel Reservation," which appeared to be bounded on one
side by Mallory street, on another by two lots and an alley, on
another by Floyd street, and on the remaining side (shown by
aliunde evidence to be the south side) by Page avenue.  The south
line of the lot designated "Hotel Reservation" and the south
line of other lots by the side of the "Hotel Reservation" formed a
continuous line.   South of the line thus formed was another line,
parallel thereto, and in the space between these two lines were
written the words "Page Avenue."   Still further south of the
most southerly of the two above-mentioned lines was still another
line, parallel to the one last mentioned, and between these two was
a space in which were written the words "Beach Line—High-water
Mark."   Immediately south of all of these was a space marked
"Saint Simons," which by aliunde evidence was shown to be Saint
Simons sound.   The map did not recite the width of Page avenue,
nor the width of the beach, but aliunde evidence showed that Page

avenue was 50 feet in width, and that there was a space of high-
land 52 feet wide intervening between the south line of Page avenue
and the high-water mark of Saint Simons sound. In support of
their position that the property conveyed did not include any
part of Page avenue, the plaintiffs contended that the deed ex-
pressly referred to the map as more particularly describing the
property intended to be conveyed, which was the lot therein desig-
nated as "Hotel Reservation," and that as the plat clearly desig-
nated "Hotel Reservation" as a particular lot, lying within desig-
nated bounds, none of which included any part of Page avenue or
any land on the opposite side of Page avenue, the boundaries given
in the plat should be regarded as controlling and indicating the
real intent of the parties as to what property was intended to be
conveyed; and as the plat thus clearly showed what was intended
to be conveyed, other language in the deed, reciting that one of the
boundaries of the property conveyed was "high-water mark," and
that the deed conveyed a portion of "Page avenue," was merely
false description and ought to be disregarded. In support of this
contention the plaintiffs cited the case of *Harris* v. *Hull,* 70 *Ga.*
831, where it was said : "In construing conveyances of land, effect
is to be given to every part of the description, if practicable ; but
if the thing intended to be granted appears clearly and satisfac-
torily from any part of the description, and other circumstances
of description are mentioned which are not applicable to that thing,
the grant will not be defeated ; but those circumstances will be re-
jected as false or mistaken. What is most material and most cer-
tain in a description shall prevail over that which is less material
and less certain." In *Sears* v. *Carver,* 133 *Ga.* 422 (65 S. E. 886),
it was held : "Where the award of the commissioners to admeasure
dower refers to an attached plat for description of the land assigned,
courses, distances, names and marks on the monuments, as appear-
ing on the plat, are to be considered as if written on the return of
the commissioners." In the case of *Jefferis* v. *East Omaha Land
Co.,* 134 U. S. 178 (10 Sup. Ct. 518, 33 L. ed. 872), it was said :
"Where a plat is referred to in a deed as containing a description
of land, the courses, distances, and other particulars appearing on
the plat are to be as much regarded in ascertaining the true descrip-
tion of the land and the intent of the parties as if they had been
expressly enumerated in the deed." These and similar rulings

which might be cited are authority for the proposition that where
a plat is appropriately made a part of a deed, its descriptive aver-
ments become parts and parcels of the deed. It does not neces-
sarily follow that they are to be given greater weight in con-
struing the deed than other descriptive averments. They might,
under particular circumstances, be entitled to greater weight, but
they might not be entitled to greater weight under other circum-
stances. The deed, including the descriptive averments in the body
of the instrument, as well as those in the plat, is to be construed as
a whole, and effect given to every part thereof, if practicable. Civil
Code, § 3607. Treating the map as a part of the deed, and con-
struing the deed as a whole in connection with the extraneous evi-
dence, it appears that the recital in the body of the deed that Page
avenue was on the west of the "Hotel Reservation" was erroneous,
it being in fact on the south. The body of the deed did not ex-
pressly restrict the land conveyed to that particular lot which was
designated on the map as the "Hotel Reservation," but recited a
conveyance "of all that lot of land known as 'Hotel Reservation,'
. . more particularly and perfectly described on the map or
plan of said King City," and proceeded to give the boundaries by
streets, etc. On two sides it was described as bounded by streets,
on another by two lots and an alley, and on the remaining side the
only boundary given was high-water mark. The body then recited
that the property conveyed included a portion of Page avenue as
shown on the plan of said King City. Under the extraneous evi-
dence, the boundary recited as "high-water mark" was on the south
of the property conveyed; and if the east and west lines were pro-
jected across Page avenue to high-water mark, it would include a
portion of Page avenue, and also a portion of the highland inter-
vening between Page avenue and high-water mark; but the plat did
not indicate any such intervening land. According to its terms,
while the width of Page avenue was not expressed, Page avenue
covered the entire distance between the lines designated on the plat
as the south line of "Hotel Reservation" and the high-water mark.
The deed expressly recited that on the side on which Saint Simons
sound was located it should extend as far as the high-water mark,
and that it conveyed a portion of Page avenue. It also, in this
connection, employed the language "as shown on the plan." While
reference to the plan would show a perfect description of the tract

of land designated "Hotel Reservation," it would not show that the lot so designated extended to high-water mark, or that it embraced any part of Page avenue. If it had not been intended to convey any part of Page avenue, or to grant all the property down to high-water mark, it is impossible to account for such express declarations as those which stated that it did include a part of Page avenue and extended to high-water mark. There is a conflict between these declarations and the map, but these descriptive averments are not such as ought to be disregarded as surplusage; but giving due effect to all of the deed, including the map, it should be construed as conveying the property down to high-water mark, including that part of Page avenue which lies between the east and west lines of "Hotel Reservation," delineated on the map, projected over Page avenue down to high-water mark.

3. The plaintiffs claimed title to the beach extending from high-water mark to low-water mark opposite the improvements of Mrs. Wallace. In 1804 and 1810 William Page was the grantee in two deeds which together conveyed to him what was afterwards called "Retreat Plantation," on Saint Simons Island. They were recorded. Construing the terms of the deeds and the maps which were made a part of the description thereof, they expressly conveyed the land to low-water mark on Saint Simons sound. There was evidence of possession on the part of Page, and those holding under him, for many years. The plaintiffs in the present case were descendants of Page and persons holding under them. In 1886 a part of the "Retreat Plantation" was laid out into lots, and the name of "King City" was given to the survey. The defendant bought a portion of the land in King City. Her deed expressly bounded the land conveyed to her by high-water mark. A number of lots were sold in "King City" to different persons, but what was not sold off remained in the original owners and others who succeeded to their rights. As we construe the original deeds to include the land to low-water mark and the defendant's deed to include the land only to high-water mark, the land between the two remained in Page or those succeeding to his rights. In a word, the plaintiffs and the defendants both claim under the same title. The plaintiffs represent the holders of this title to the entire plantation down to low-water mark, except so much of it as has been sold off, while Mrs. Wallace holds a fraction of the plantation sold to her and by

the terms of her deed extending only to high-water mark, thus leaving the land between high-water mark and low-water mark unconveyed. Whether in a controversy between the State and an individual there is any presumption against the State from possession and lapse of time or not, or what would be the case if the State asserted title to a particular piece of land and granted it, there is undoubtedly a possession which may become a prescriptive title between a prescriber and other persons. Under the facts, as between the plaintiffs and the defendants, in 1902 the plaintiffs had a title to low-water mark and the defendants had not. The act of 1902 (Acts 1902, p. 108) did not affect the case. It did not undertake to take the title to land from one person and confer it upon another. The deeds to Page recited grants from the State to certain parties named, and that the conveyance to him covered such land. As already stated, Mrs. Wallace holds under this title. She simply took a deed to a part of a tract of land. The boundaries of the whole extended to low-water mark. The boundary of her deed was expressly high-water mark. What was left between the two remained in the owners of the entire plantation or in those succeeding to their rights, and the act of 1902 did not undertake to take this title away from the latter and confer it upon her. The thing complained of and sought to be enjoined was the construction and use of a wharf over the beach between high and low-water marks. If it had been erected, it would have constituted a continuing nuisance. As the evidence demanded a finding in favor of the title of the plaintiffs to the whole of the beach, including that part to which title was asserted by Mrs. Wallace, it was erroneous to refuse to grant the injunction, as prayed, relatively to the beach. ·

4. Complaint was also made because the judge refused to grant the injunction in so far as it related to the encroachment upon Mallory street. It appeared from the evidence that the encroachment was brought about by extending the hotel building for a distance of 5 feet over the west line of Mallory street. The structure was permanent in character, and was completed before the institution of the suit. While it might be a nuisance if left in the street, and be subject to be abated as such, there is an adequate remedy at law, and injunction is not the remedy. The prayer was to prevent the defendants from maintaining the obstruction, and from interfering with the free use, enjoyment, and occupancy of

the street by the plaintiffs and other owners of lots in King City. The effect was to pray for the removal of the structure from the street. It was not alleged that maintaining the structure in the street would be a nuisance for any other reason than that it was in the way. The relief sought was positive in character, and can not be accomplished through the office of injunction.

*Judgment reversed. Beck, J., absent. The other Justices concur.*

### ON MOTION FOR REHEARING.

1. On the motion for a rehearing, it was urged that even if it should be held that the plaintiffs or those under whom they hold had title extending to low-water mark, yet the right of access to the water was an easement necessary and appurtenant to the land conveyed to the defendant. But no such contention was raised by the pleadings or urged in the briefs of counsel on the argument here. On the contrary the brief of plaintiff in error contained the statement that "It will be seen that the only question to be determined in this case is whether or not the title to this strip of land lying between high and low-water mark was in plaintiff in error at the time of the filing of this bill." This case having been apparently determined in the court below and argued here on that basis, we did not deal with any question of easement. Nor do we deem it proper to rule upon that question now, or to grant a rehearing because of such contention now made by the motion.

2. In the original opinion it was not decided as a general rule of law that where a conveyance specifies as one boundary the sea or an estuary thereof, the title would extend to low-water rather than high-water mark. As will appear from a careful reading of the opinion, both parties claimed under a common source of title. In some of the deeds under which both parties obtained title references were made to grants and to maps attached to such deeds. Upon a construction of these deeds we held that it appeared that the description extended one of the boundaries to low-water mark. The plaintiffs owned what had not been conveyed away. The title of the defendant expressly stopped at high-water mark. Hence, the strip between high and low-water remained in the plaintiffs.

3. None of the grounds upon which the motion for rehearing was based present reasons sufficient to render a rehearing necessary.

*Motion overruled.*