## THOMPSON *v.* HILL.

1. If the land intended to be granted appears clearly and satisfactorily from any part of the description in a deed, and other circumstances of description are mentioned which are not applicable to that land, the grant will not be defeated, but those circumstances will be rejected as false or mistaken.

2. A deed to a parcel of land in a town described the land conveyed clearly by fixing its corner with reference to the distance from the intersection of two streets, bounding the land on two sides by parallel streets, stating the distance between them and the number of feet which the land fronted on them. There was not in that immediate connection any mention of lot numbers. The deed then, in another paragraph, described other land conveyed, in connection with which, and seemingly as a part of the description of which, was added, "and being lots 66 and 75 of the J. B. Thompson property, as per plat No. 2 exhibited at auction sale thereof by Samuel W. Goode & Co., June 23rd, 1887." The land first described covered lots numbered 65, 66, 75, and 76. From the map contained in the record it did not appear what were the numbers of the second described parcel. The land was conveyed by one who inherited under the grantee to a purchaser, who took possession. A month after making the first deed, the original grantor made a warranty deed to another, describing the land so as to convey one half of that covered by the first description in the other deed, "being lots Nos. 66 and 75" as per the Goode & Co. plat. There was no effort to reform the first deed. The second grantee brought suit against the holder under the first deed, to recover the land described in the second deed, but failed to recover. He then sued the grantor on his warranty. *Held,* that he was entitled to recover.

3. Parol evidence is admissible to adjust the description in a deed to the land conveyed; but if a deed conveys certain land, in the absence of any effort to have it reformed, its effect can not be controlled by parol evidence that there was a mistake in the description, whereby more land was included than was intended.

JANUARY 9, 1912.

Action for breach of warranty. Before Judge Pendleton. Fulton superior court. September 8, 1910.

*Anderson, Felder, Rountree & Wilson,* for plaintiff in error.
*Gober & Griffin* and *Bell & Ellis,* contra.

LUMPKIN, J.　R. A. Hill sued J. B. Thompson for breach of warranty. It appeared that the defendant had a tract of land surveyed into lots, and had a sale thereof. On June 23, 1887, he executed to Y. H. Thompson a deed, which was recorded on September 1, 1887. The recited consideration was $171. The description of the land conveyed was as follows: "All that tract or parcel of land situated, lying and being in the town of Austell, Georgia, and being part of Land Lot 140 in the Eighteenth District of Cobb County, Georgia, commencing at a point on Hotel Street two hundred and eight (208) feet from the Southeast corner of Hotel and Central Streets; thence East two hundred and twenty-three (223) feet to Pine Street; thence South along Pine Street one hundred and four (104) feet; thence West two hundred and twenty-three (223) feet to Hotel Street; thence North along said street one hundred and four (104) feet to the beginning.

"Also beginning at a point forty-nine (49) feet from the Southwest corner of Thompson Avenue and Central Street; thence West two hundred and twenty-nine and one half (229½) feet to a twenty-foot alley; thence South along said twenty-foot alley ninety-eight (98) feet; thence East two hundred and twenty-eight (228) feet to Thompson Avenue; being lots numbered 65, 76, 124, and 125 of the J. B. Thompson property, as per plat No. 2 exhibited at auction sale of same by Sam. W. Goode & Company on June 23rd, 1887."

On July 22, the same grantor executed to the present plaintiff a deed, which was recorded on October 9. It recited a consideration of $70, and described the land conveyed as follows: "All that tract or parcel of land lying and being in the town of Austell, Georgia, and being part of Land Lot 140 in the Eighteenth District of Cobb County, Georgia, and more particularly described as follows, to wit: Commencing at a point on Hotel Street two hundred and sixty (260) feet from the Southeast corner of Hotel and Central Streets; thence East two hundred and twenty-three (223) feet to Pine Street; thence South along Pine Street fifty-two (52) feet; thence West two hundred and twenty-three (223) feet to Hotel Street; thence North along said Hotel Street fifty-two (52) feet to the point of beginning; and being lots Nos. 66 and 75 of

the J. B. Thompson property, as per plat No. 2 exhibited at auction sale thereof by Samuel W. Goode & Co., June 23rd, 1887."

Y. H. Thompson died, and one who inherited the property conveyed the land described in the first deed set out above to one Tom Jones. The latter took possession. Hill, the grantee in the second deed, brought suit in 1903 to recover the land described in his deed. A verdict and judgment went against him in 1905. In 1908 he brought suit against his grantor, alleging a breach of warranty. On the trial the court directed a verdict in favor of the plaintiff. The defendant excepted.

1. It was an ancient maxim that the first deed and the last will prevails. Shep. Touch. 88. This principle was applied to inconsistent clauses in the same instrument, so that the former of such clauses prevailed in case of a deed, the latter in case of a will. The trend of modern authorities is toward restricting the operation of this rule, so as to give effect to every part of a deed if possible; and if this can not be done, and there is an obvious intent derivable from the face of the instrument, the tendency is to reject only superadded parts which are repugnant thereto, if it can be done without violating some rule of law. In this State the rule as to repugnant clauses has been codified in section 4187 of the Code of 1910 thus: "If two clauses in a deed be utterly inconsistent, the former must prevail; but the intention of the parties, from the whole instrument, should, if possible, be ascertained and carried into effect."

Out of this disposition to give effect to an instrument, where practicable, doubtless arose the maxim, "Falso demonstratio non nocet cum de corpore constat" (mere false description does not vitiate, if there be sufficient certainty as to the object). Characteristic cases within the rule, as strictly applied, were those where the description, so far as it was false, applied to no subject, and, so far as it was true, applied only to one subject. But in pursuance of the current of modern authority above mentioned, it has become settled law that if the thing intended to be granted appears clearly and satisfactorily from any part of the description, and other circumstances of description are mentioned which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as false or mistaken, although it would be possible to apply them to a subject-matter so as to enlarge

or diminish the grant. In seeking to determine whether a deed shows on its face what was the thing so intended to be granted, and whether there are other circumstances of description which may be rejected as false or mistaken, certain general rules have been evolved, under which ordinarily certain matters of description will outweigh or prevail over others. A few of these may be mentioned. What is most material and most certain in a description shall prevail over that which is less material and less certain. Thus courses and distances yield to natural, visible, and ascertained objects. Accordingly, when in the description of land in a deed known monuments are referred to as boundaries, they must usually govern, although neither courses nor distances nor the computed contents correspond therewith. Natural monuments have greater weight than artificial ones. Where all other means of ascertaining the true construction of a deed fails, and a doubt still remains, that construction is rather to be preferred which is most favorable to the grantee. Tyler on Boundaries, 119, 120; *Harris* v. *Hull*, 70 *Ga.* 831. In the law of processioning, the Civil Code (1910), § 3820, declares, that, "In all cases of disputed lines, . . natural landmarks, being less liable to change, and not capable of counterfeit, shall be the most conclusive evidence; ancient or genuine landmarks, such as corner station or marked trees, shall control the course and distances called for by the survey." This accords with the method of construing deeds above mentioned.

The rule in regard to monuments is not a mere arbitrary dictum, but is founded on reason and experience. As grants and conveyances are usually made with reference to an actual view of the premises, this is treated as presumptively the case. Monuments are considered stable and certain. They are visible things, existing on the ground, indicating the extent of the land and the direction of its boundaries. Those who examine the ground can see the monuments indicating the direction of its lines and the extent of its contents. Courses and distances laid down in a deed or plat, or in field notes, are merely descriptive of the land as it is. Hence, if the deed describes the land by monuments, this will control calls for courses and distances descriptive of the same property. As natural monuments are likely to be more permanent and notorious in character than artificial monuments erected by an owner, recourse is had to the former rather than to the latter, in case of conflict.

As an illustration of the application of these rules, where there was a grant of an island by name, in the Potomac river, and there were superadded the courses and distances of the lines, which were found to exclude part of the island, the whole island passed. It was deemed the substantial purpose to grant the island, and that the description of it was superadded. Lodge's Lessee *v.* Lee, 6 Cranch, 237 (3 L. ed. 210). Where there was a lease of a farm on which J. B. now resides, "to contain eighty acres in one piece," and the farm actually contained more than eighty acres, the lease was held to cover the whole. Jackson *v.* Livingston, 15 Johnson, 470. Where a tract of land was first described as "being the same premises conveyed" to the grantor by a certain deed, and then there was an effort to give the metes and bounds, but they omitted a part of the premises first declared to be conveyed by the deed, it was held that the whole tract passed. Foss *v.* Crisp, 20 Pick. 121. On the other hand, where land had been laid off by a government survey into land lots, and a deed conveyed several of the land lots by number (except fifty acres in the southeast corner of one of them), and added, "known as the Wooldridge plantation," those words were treated as matter of further description, and not as limiting the land granted, though the lots named covered more than the "Wooldridge plantation." *Osteen* v. *Wynn,* 131 *Ga.* 209 (62 S. E. 36, 127 Am. St. R. 212). Where a deed conveys a lot of land expressly with reference to a plat, the courses, distances, and monuments appearing on the plat are to be considered in ascertaining the description of the land and the intent of the parties as if they had been expressly enumerated in the deed. *Schreck* v. *Blun,* 131 *Ga.* 489 (62 S. E. 705); *Aiken* v. *Wallace,* 134 *Ga.* 873, 876 (68 S. E. 937). Where a lot is conveyed according to its number in a certain plan or plat, so that it is evident that the important thing under consideration in the grant is the particular lot, and there is superadded to this a description which does not include the entire lot, it has been held that the erroneous description will yield to the conveyance by number; and it has also been said that this would be true whether the number immediately preceded the description or vice versa, if it were evident from the deed that the lot known by number was the important or certain thing in the conveyance.

In Rutherford v. Tracy, 48 Mo. 325 (8 Am. R. 104), the language conveying the premises was as follows. "Lot No. 3 in block

87, in the old town of Hudson, now Macon; beginning at the northeast corner, thence west to the alley, thence south eighteen feet, thence east the length of the lot, thence north eighteen feet to the beginning." This description embraced a less area than lot 3. It was held that the entire lot passed. The statement that the designation of the number of the lot had the same effect as that of a fixed monument evidently meant that the deed showed that the main purpose was to convey the whole lot, and that an erroneous description, including less than the whole, would yield to the designation of the lot as a whole. It was moreover added that this would not be the case, if the deed showed a contrary intent. Strictly speaking, monuments are permanent landmarks established for the purpose of indicating boundaries. Bouvier's Law Dict. "Monuments." A plat is not a mark on the land, but a representation of the land on paper, appealing to the eye by means of lines and memoranda rather than by words alone. The same remark may be made of some other cases in which is used similar language to that employed in the case last cited, or where there is a bald statement that lot numbers will prevail over a description by metes and bounds, as if it were an arbitrary and inflexible rule.

In a note to Heaton v. Hodges, 30 Am. D. 731 (14 Me. 66), that excellent annotator, Mr. A. C. Freeman, says (p. 740) : "There is no magic in a monument which will give it invariable control in such cases. It controls only because it is regarded as more certain than a given course or distance. If it should, in a given case, be less certain, the rule would fail with the reason for it, and the monument would yield to the course and distance, and an artificial monument will yield more readily than a natural one." In White v. Luning, 93 U. S. 514 (23 L. ed. 938), it was held that "The rule that monuments, natural or artificial, rather than courses and distances, control in the construction of a conveyance of real estate, will not be enforced, when the instrument would be thereby defeated, and when the rejection of a call for a monument would reconcile other parts of the description, and leave enough to identify the land." In Higginbotham v. Stoddard, 72 N. Y. 94, 98, a conveyance described a lot in a village as "on the southerly side of Madison street, . . being ten feet on Madison street, thirty-two feet in rear on the northerly side of the mill-race, and one hundred feet in depth from front to rear, containing twenty-one hun-

dred square feet of ground." The distances included just twenty-one hundred square feet. The northerly side of the mill-race was more than one hundred feet from Madison street. The land in question was the strip between the mill-race and a line one hundred feet from Madison street. It was held that it was not included in the deed. In the opinion it was said, that the rule as to mentioning a visible object as a boundary and thus controlling the description by courses and distances is not inflexible, and has some exceptions; that the accuracy of the measurement, the shortness of the lines, and the exact specification of contents by square feet in a lot in a village indicated, on the face of the deed, that this was a more prominent object in the conveyance than the mention of the mill-race. In Davis *v.* Rainsford, 17 Mass. 207, it was declared that "The general rule, that known monuments referred to in the description of land in a conveyance are to govern in the construction, rather than the courses, distances, or computed contents mentioned in such description, is subject to exceptions, as where an adherence to the rule would be plainly absurd." In that case the conveyance under consideration described a small strip of land as "containing between 19 and 20 square feet or thereabout, lying between my estate in Marlborough street, the estate of Davis & Brown at the corner of Marlborough and Milk streets, and the estate of said Davis, Brown & Williams, and bounded as follows, viz., northwestwardly on the line of the estate of Davis & Brown, beginning at the southeastwardly corner of their store, and running on the wall of the store northeastwardly one foot and three inches; thence running southeastwardly on the line of the estate of Davis, Brown, & Williams, where they are now building a store, six feet, ten inches; thence running southwestwardly, on the line last mentioned, four feet, four inches; thence northwardly and westwardly seven feet, eight inches, to the corner of Davis & Brown's store, the place of beginning. It is understood that the wall of the store, which said Davis, Brown, & Williams are now building on their lot herein mentioned, is to be placed exactly on the line last described," etc. There was also a sketch on the back of the deed, representing the land. Testimony was offered to show that the line of Davis, Brown & Williams was a well-known line fixed by monuments; that it was three feet and six inches northeastwardly from the point of beginning, instead of one foot and three inches; and

that therefore the deed conveyed this larger strip. In the opinion the general rule was recognized, but it was stated that the reason for it was that references to monuments are less liable to mistakes than courses and distances; but that it was not an inflexible rule, without exceptions; and that under the particular facts of that case, including the nature of the strip conveyed, the exactness of measurement, and the provision that the store to be erected should be placed exactly on the line last described, the deed itself evinced a greater probability that the boundary mentioned was a mistaken one than that there was an intent to convey a strip so much larger than that described by measurements. This decision has sometimes been referred to as exceptional, and has not escaped some criticism. But it may be cited to show that certain calls for boundaries or even monuments have not always been treated as arbitrary and absolute, where the other terms of the deed showed that they should not prevail. Parks v. Loomis, 6 Gray, 467 (where it was said that "a false demonstration, though a reference to a natural monument, may be rejected in construing a deed"); Bond v. Fay, 12 Allen, 86; Lovejoy v. Lovett, 124 Mass. 270; Gano v. Aldridge, 27 Ind. 294; Ely's Adm'r v. U. S., 171 U. S. 220 (18 Sup. Ct. 840, 43 L. ed. 142).

If the rule as to monuments is not arbitrary and without exception, but will yield, in a given case, where it appears from the deed to be less certain than other descriptions, a reference to a number on a plat is not sacrosanct, regardless of everything else in the deed. While it is often, indeed generally, of controlling force, where it indicates the main intent as to the land to be granted, the rule that it will control is not inflexible. In *Summerlin* v. *Hesterly*, 20 *Ga.* 689 (65 Am. Dec. 639), an entry of levy by a sheriff on several lots of land described one of them as being "fractional lot, whereon John Smith now lives, No. 81, in the 4th district of originally Coweta, now Heard County." In an action of ejectment one of the parties claimed under the sheriff's sale. It was shown by parol that the fractional lot on which John Smith lived at the time of the sheriff's entry was the lot in suit; and that although the number of it was not that stated in the entry of levy, but was 189, there was no such lot as that stated in the levy which was a fractional lot; or that, if such lot was a fractional lot, it was not occupied by John Smith. The reference in the entry of levy and

the sheriff's deed to the number of the lot was rejected as inaccurate, leaving the remaining description to stand. In *Johnson* v. *McKay,* 119 *Ga.* 196 (45 S. E. 992, 100 Am. St. R. 166), a mortgage described the land covered by it as in a named county, containing fifteen acres, "known as the Zachariah Emerson place, part of lots No. one hundred and twenty-five (125) in the eleventh (11) district, one part No. not known." It appeared that no part of the Emerson place was embraced in lot No. 125. It was held that the general description of the property as the Emerson place was sufficient, and the reference to lot No. 125 was treated as surplusage, under the maxim falsa demonstratio non nocet.

2. The difficulty of decision in this case arises not so much in declaring the principles of law as in applying them to the facts. An examination of the deed under consideration shows that it first contains a clear, definite, and exact description of the land, beginning at a point on a named street 208 feet from the southeast corner of that and another named street. It has as its eastern and western boundaries two streets, and its frontage on each of them is specified as 104 feet, and its depth between the streets as 223 feet. No mention of lot numbers is made in connection with such description, either immediately preceding or immediately following it. Next follows a distinct paragraph, describing other land having a frontage on another street of 98 feet and a depth of 228 feet. In closing this latter description, and apparently as a part of it, occur the words "being lots numbered 65, 76, 124, and 125 of the J. B. Thompson property, as per plat No. 2 exhibited at auction sale of same by Sam. W. Goode & Company on June 23rd, 1887." While punctuation is not of great force in determining the meaning of a conveyance, it is worthy of note that, in the description of the second piece of land conveyed, the different calls are separated by semicolons, and after the description of the last line, and separated from it only by another semicolon, occur the words above quoted.

The plat was introduced in evidence, and there is brought to this court what is stated to be so much of it as relates to the lots in controversy. It shows a block divided by a line running north and south through the center and by lines running east and west, with surrounding streets on three sides and an alley on the fourth. Each lot so represented has entered on its front line the figures 52. A number also appears entered in the middle portion of the lot.

Treating the figures 52 as representing the street frontage in feet, and counting from the corner of the block, the first description of the land in the deed above mentioned would include lots 65, 66, 75, and 76. The plat in the record does not show the location or numbering of the second tract described.

This is not an effort to reform the deed, nor is it a controversy between the first grantor and the grantee. The second grantee brought suit against the first to recover the two lots mentioned in his deed, but a judgment was rendered against him. This was not conclusive upon the grantor, as he does not appear to have been vouched. The second grantee, having lost the lots conveyed to him, now sues the common grantor for breach of warranty. Upon the facts of the case, we think he should recover. The description in the first deed of the land granted is clear, definite, and exact. It shows a reference to measurements on the land itself, by reference to the street corner, the beginning point of the lot conveyed, the side streets, and the frontage on each. It is followed by a description of other land, as a part of which there is a reference to a plat. But we do not think that this is sufficient to cut in half the description of the first lot conveyed. In most of the cases where the reference to lots by number or by name prevailed, the effort was to decrease the amount included in the lot granted, by reason of an added description by courses and distances. If resort is had to the rule of construction favorable to the grantee, or to that relative to utterly inconsistent clauses, it leads to the same conclusion.

3. The grantor testified, in effect, that the first deed was a mistake, if it included lots 66 and 75. But we do not think that, in a proceeding like the present one, such evidence can prevail over the deed itself. Parol evidence is competent to adjust the description in a deed to the land conveyed. If there are references to monuments or boundaries, it can be shown where they are located. If a place is described by name, it can be proved what land was known by that name. It can be shown that certain calls in a deed do not touch or apply to the lots sought to be conveyed. Sometimes occupation or the practical construction given to a deed by the subsequent acts of the parties thereto may be admissible. But it has been held that parol evidence is not admissible to control the legal effect of a deed, nor to show that a description which the law will disregard ought to prevail. Benedict *v.* Gaylord, 11 Conn. 332 (29

Am. D. 299); Roberti *v.* Atwater, 42 Conn. 269; Bond *v.* Fay, 12 Allen, 86.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*