## HOLDER *v.* JORDAN REALTY COMPANY.

</div>

The descriptive clause in the deed involved in this case contained particular words of description which referred also to a plat. The plat was more definite than the particular words of description, and was properly for consideration as a part of the deed. Construing the plat in connection with the words of particular description, the deed was sufficient to include the land involved in a suit instituted by a person claiming

---

Boundaries, 9 C. J. p. 212, n. 13, 21; p. 213, n. 33; p. 221, n. 95, 97.
Deeds, 18 C. J. p. 252, n. 30; p. 256, n. 73; p. 257, n. 79; p. 263, n. 64; p. 267, n. 23, 30; p. 268, n. 37; p. 277, n. 88; p. 282, n. 50; p. 284, n. 77, 78; p. 287, n. 18, 19.

under the deed; and it was error to grant a nonsuit on the ground that the deed was insufficient to convey the land in dispute.

No. 5428. FEBRUARY 15, 1927.

Complaint for land. Before Judge Malcolm D. Jones. Bibb superior court. April 27, 1926.

F. J. Holder instituted an action against Jordan Realty Company, to recover a strip of land 10 feet wide and 58-¼ feet long, in the shape of a parallelogram, alleged to be in a specified subdivision, recorded in the ordinary's office of Bibb County, in minute book "S," folio 576; and so described by metes and bounds as to show that the land sought to be recovered would coincide with the projection of an alley shown on the plat, if the alley should be extended to the limit of said lot number five. The defendant's answer denied that plaintiff owned the land. The plaintiff introduced a deed from Mrs. Ellen Redmond as administratrix of the estate of Michael Redmond, to M. J. Redmond. That deed recited that it was made by virtue of an order of the court of ordinary upon application of the administratrix to divide the estate of said Michael Redmond in kind, and purported to convey "all that tract or parcel of land lying, situate, and being in the City of Macon, Bibb County, Ga., known and distinguished in the plan attached to and made a part of the appraisers' return in the above-stated proceeding, recorded in ordinary's office, Bibb County, in Book 'S,' folio 576, as being lot 5 of the subdivision of the lands of Michael Redmond, deceased." (Then follows a particular . description of the lot by metes and bounds.) This deed was executed in November, 1900, and duly recorded; and the attorneys admitted in open court that Michael Redmond originally owned the land, and that said deed conveyed "whatever title Michael Redmond had in" the land. The plaintiff also introduced an exemplification of the "plan" of the subdivision of the lands of Michael Redmond, deceased, referred to in said deed, which was as follows:

The plaintiff also introduced a deed from M. J. Redmond to Willingham Loan & Trust Company, which purported to convey "all that tract of land in the County of Bibb, in the State of Georgia, in the City of Macon, known as part of lots seven and eight in block 53, southwest commons of said city, fronting on Hazel Street 50 feet, and extending back with an even width along

a private alley separating the property herein conveyed from lots numbers one, two, three, and four in subdivision of said lots seven and eight, block 53, a distance of 228-½ feet; said above-described property known as lot Number 5 in subdivision of lots seven and eight in block 53, as shown by plat thereof recorded in ordinary's office, Bibb County, in minute book S, folio 576." The plaintiff also introduced deeds showing mesne conveyances from the last named grantee to himself. The plaintiff having rested his case, a nonsuit was granted, and he excepted.

*John Y. Roberts* and *Hall, Grice & Bloch,* for plaintiff.

*Harry S. Strozier,* for defendant.

ATKINSON, J. By comparing the description alleged in the petition with the plat it will be seen that the land in controversy is the strip of land ten feet wide and 58-¼ feet long in the northwest corner of lot number 5 which would be a projection of the alley if the alley which stops at the line of lot number 4 were extended to the Findlay property. It is stated in the briefs of the attorneys for the parties that the nonsuit was awarded on the idea that the deed from M. J. Redmond to Willingham Loan & Trust Company, properly construed, did not include the land in dispute; the basis of that conclusion being that, without reference to the plat, the deed contained a complete particular description of the land intended to be conveyed, which did not include the land in controversy, and that the reference to the plat was mere additional description of the same land, and did not in legal effect enlarge the particular description, and consequently the instrument did not convey the title of the grantor to the grantee. This indicates what is conceded to be the controlling question in the case. In the brief of the attorney for the defendant in error it is stated that the trial judge based his decision on the ruling in *Wooten* v. *Solomon,* 139 *Ga.* 433 (77 S. E. 375), where it was said: "If the plat conflicts with the previous particular description, the lot must be located according to the particular description." The ruling in that case will be adverted to presently. It was held in *Osteen* v. *Wynn,* 131 *Ga.* 209 (2) (62 S. E. 37, 127 Am. St. R. 212): "Where a deed contains two descriptions of the land conveyed, one general and the other particular, if there is any repugnance, the latter will prevail. So where a deed conveys several lots of land by number, and all of

a named lot except 50 acres in the southeast corner, followed by the words, 'known as the Wooldridge plantation,' the latter words are but matter of further description." The description involved in that case was: "all of lots of land numbers 148 and 149, of 202-½ [acres] each, more or less, and all of lot 147 except 12 acres off the northeast corner, all of lot 140 except 50 acres of the southeast corner thereof, and all of lot 141 except 38 acres off the northern one fourth of said lot, said tract of land aggregating 850 acres, more or less. . . Said lands known as the Wooldridge plantation on the Cusseta and Jamestown road."

*Thompson* v. *Hill*, 137 *Ga.* 308 (73 S. E. 640), was a case where the owner of land subdivided it in lots, caused a map of the lots to be recorded, and sold lots with reference to the map and executed deeds. The deeds made reference to the lot numbers, and also contained particular words describing the land by metes and bounds, giving the names of certain streets and a certain building. The particular description in one of the deeds overlapped a lot conveyed by a senior deed. The holder of the junior deed, having suffered a recovery against him in ejectment, instituted an action for breach of the warranty expressed in his deed. In that case it was said by Lumpkin, J.: "It was an ancient maxim that the first deed and the last will prevails. Shep. Touch. 88. This principle was applied to inconsistent clauses in the same instrument, so that the former of such clauses prevailed in case of a deed, the latter in case of a will. The trend of modern authorities is toward restricting the operation of this rule, so as to give effect to every part of a deed if possible; and if this can not be done, and there is an obvious intent derivable from the face of the instrument, the tendency is to reject only superadded parts which are repugnant thereto, if it can be done without violating some rule of law. In this State the rule as to repugnant clauses has been codified in section 4187 of the Code of 1910 thus: 'If two clauses in a deed be utterly inconsistent, the former must prevail; but the intention of the parties, from the whole instrument should, if possible, be ascertained and carried into effect.'

"Out of this disposition to give effect to an instrument, where practicable, doubtless arose the maxim, 'Falso demonstratio non nocet cum de corpore constat' (mere false description does not

vitiate, if there be sufficient certainty as to the object). Characteristic cases within the rule, as strictly applied, were those where the description, so far as it was false, applied to no subject, and, so far as it was true, applied only to one subject. But in pursuance of the current of modern authority above mentioned, it has become settled law that if the thing intended to be granted appears clearly and satisfactorily from any part of the description, and other circumstances of description are mentioned which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as false or mistaken, although it would be possible to apply them to a subject-matter so as to enlarge or diminish the grant. In seeking to determine whether a deed shows on its face what was the thing so intended to be granted, and whether there are other circumstances of description which may be rejected as false or mistaken, certain general rules have been evolved, under which ordinarily certain matters of description will outweigh or prevail over others. A few of these may be mentioned. What is most material and most certain in a description shall prevail over that which is less material and less certain. Thus courses and distances yield to natural, visible, and ascertained objects. Accordingly, when in the description of land in a deed known monuments are referred to as boundaries, they must usually govern, although neither courses nor distances nor the computed contents correspond therewith. Natural monuments have greater weight than artificial ones. Where all other means of ascertaining the true construction of a deed fails, and a doubt still remains, that construction is rather to be preferred which is most favorable to the grantee. Tyler on Boundaries, 119, 120; *Harris* v. *Hull, 70 Ga.* 831. In the law of processioning, the Civil Code (1910), § 3820, declares, that, 'In all cases of disputed lines, . . natural landmarks, being less liable to change, and not capable of counterfeit, shall be the most conclusive evidence; ancient or genuine landmarks, such as corner station or marked trees, shall control the course and distances called for by the survey.' This accords with the method of construing deeds above mentioned.

"The rule in regard to monuments is not a mere arbitrary dictum, but is founded on reason and experience. As grants and conveyances are usually made with reference to an actual view of

the premises, this is treated as presumptively the case. Monuments are considered stable and certain. They are visible things, existing on the ground, indicating the extent of the land and the direction of its boundaries. Those who examine the ground can see the monuments indicating the direction of its lines and the extent of its contents. Courses and distances laid down in a deed or plat, or in field notes, are merely descriptive of the land as it is. Hence, if the deed describes the land by monuments, this will control calls for courses and distances descriptive of the same property. As natural monuments are likely to be more permanent and notorious in character than artificial monuments erected by an owner, recourse is had to the former rather than to the latter, in case of conflict.

"As an illustration of the application of these rules, where there was a grant of an island by name, in the Potomac river, and there were superadded the courses and distances of the lines, which were found to exclude part of the island, the whole island passed. It was deemed the substantial purpose to grant the island, and that the description of it was superadded. Lodge's Lessee v. Lee, 6 Cranch, 237 (3 L. ed. 210). Where there was a lease of a farm on which J. B. now resides, 'to contain eighty acres in one piece,' and the farm actually contained more than eighty acres, the lease was held to cover the whole. Jackson v. Livingston, 15 Johnson, 470. Where a tract of land was first described as 'being the same premises conveyed' to the grantor by a certain deed, and then there was an effort to give the metes and bounds, but they omitted a part of the premises first declared to be conveyed by the deed, it was held that the whole tract passed. Foss v. Crisp, 20 Pick. 121. On the other hand, where land had been laid off by a government survey into land lots, and a deed conveyed several of the land lots by number (except fifty acres in the southeast corner of one of them), and added, 'known as the Wooldridge plantation,' those words were treated as matter of further description, and not as limiting the land granted, though the lots named covered more than the 'Wooldridge plantation.' *Osteen* v. *Wynn,* 131 *Ga.* 209 (62 S. E. 36, 127 Am. St. R. 212). Where a deed conveys a lot of land expressly with reference to a plat, the courses, distances, and monuments appearing on the plat are to be considered in ascertaining the description of the land

and the intent of the parties as if they had been expressly enumerated in the deed. *Schreck* v. *Blun,* 131 Ga. 489 (62 S. E. 705); *Aiken* v. *Wallace,* 134 Ga. 873, 876 (68 S. E. 937). Where a lot is conveyed according to its number in a certain plan or plat, so that it is evident that the important thing under consideration in the grant is the particular lot, and there is superadded to this a description which does not include the entire lot, it has been held that the erroneous description will yield to the conveyance by number; and it has also been said that this would be true whether the number immediately preceded the description or vice versa, if it were evident from the deed that the lot known by number was the important or certain thing in the conveyance.

"In Rutherford *v.* Tracy, 48 Mo. 325 (8 Am. R. 104), the language conveying the premises was as follows: 'Lot No. 3 in block 87, in the old town of Hudson, now Macon; beginning at the northeast corner, thence west to the alley, thence south eighteen feet, thence east the length of the lot, thence north eighteen feet to the beginning.' This description embraced a less area than lot 3. It was held that the entire lot passed. The statement that the designation of the number of the lot had the same effect as that of a fixed monument evidently meant that the deed showed that the main purpose was to convey the whole lot, and that an erroneous description, including less than the whole, would yield to the designation of the lot as a whole. It was moreover added that this would not be the case, if the deed showed a contrary intent. . . In a note to Heaton *v.* Hodges, 30 Am. D. 731 (14 Me. 66), that excellent annotator, Mr. A. C. Freeman, says (p. 740): 'There is no magic in a monument which will give it invariable control in such cases. It controls only because it is regarded as more certain than a given course or distance. If it should, in a given case, be less certain, the rule would fail with the reason for it, and the monument would yield to the course and distance, and an artificial monument will yield more readily than a natural one.' In White *v.* Luning, 93 U. S. 514 (23 L. ed. 938), it was held that 'The rule that monuments, natural or artificial, rather than courses and distances, control in the construction of a conveyance of real estate, will not be enforced, when the instrument would be thereby defeated, and when the rejection of a call for a monument would reconcile other

parts of the description, and leave enough to identify the land.'
In *Higginbotham* v. *Stoddard*, 72 N. Y. 94, 98, a conveyance
described a lot in a village as 'on the southerly side of Madison
street, . . being ten feet on Madison street, thirty-two feet in
rear on the northerly side of the mill-race, and one hundred feet
in depth from front to rear, containing twenty-one hundred square
feet of ground.' The distances included just twenty-one hundred
square feet. The northerly side of the mill-race was more than
one hundred feet from Madison street. The land in question was
the strip between the mill-race and a line one hundred feet from
Madison street. It was held that it was not included in the deed.
In the opinion it was said, that the rule as to mentioning a
visible object as a boundary and thus controlling the description
by courses and distances is not inflexible, and has some excep-
tions. . .

"If the rule as to monuments is not arbitrary and without
exception, but will yield, in a given case, where it appears from
the deed to be less certain than other descriptions, a reference to
a number on a plat is not sacrosanct, regardless of everything
else in the deed. While it is often, indeed generally, of control-
ling force, where it indicates the main intent as to the land to be
granted, the rule that it will control is not inflexible. In *Sum-
merlin* v. *Hesterly*, 20 *Ga.* 689 (65 Am. Dec. 639), an entry of
levy by a sheriff on several lots of land described one of them as
being 'fractional lot, whereon John Smith now lives, No. 81, in
the 4th district of originally Coweta, now Heard County.' In an
action of ejectment one of the parties claimed under the sheriff's
sale. It was shown by parol that the fractional lot on which
John Smith lived at the time of the sheriff's entry was the lot in
suit; and that although the number of it was not that stated in
the entry of levy, but was 189, there was no such lot as that
stated in the levy, which was a fractional lot; or that, if such
lot was a fractional lot, it was not occupied by John Smith. The
reference in the entry of levy and the sheriff's deed to the number
of the lot was rejected as inaccurate, leaving the remaining
description to stand. In *Johnson* v. *McKay*, 119 *Ga.* 196 (45
S. E. 992, 100 Am. St. R. 166), a mortgage described the land
covered by it as in a named county, containing fifteen acres,
'known as the Zachariah Emerson place, part of lots No. one

hundred and twenty-five (125) in the eleventh (11) district, one part No. not known.' It appeared that no part of the Emerson place was embraced in lot No. 125. It was held that the general description of the property as the Emerson place was sufficient, and the reference to lot No. 125 was treated as surplusage, under the maxim falsa demonstratio non nocet."

In *Woolen* v. *Solomon,* 139 *Ga.* 433 (supra), it was held: "Where a deed describes the lot conveyed by metes and bounds, and refers to a plat as representing them, the reference is not to enlarge or diminish the effect of the descriptive words of the conveyance, but to give them efficacy, and the operative words are found in the deed itself." In the opinion it was said: "The contention is made that there is a conflict in the deed between the descriptive words and the plat, and that the latter, being more definite, must control. In the first place, we do not think that the plat is as definite as the writing in defining the property conveyed. The writing declares that two separate lots are conveyed, and their exact dimensions and boundaries are given. It is further stated that the property line with respect to the streets shall be located by existing encroachments. The plat is not given by way of more particular description, but as a pictorial representation of what has been described. It is not intended to conflict with the written description, and should not be so considered. But if the plat conflicts with the previous particular description, the lot must be located according to the particular description. Where a deed describes the lot conveyed by metes and bounds and refers to a plat as representing them, the reference is not to enlarge or diminish the effect of the descriptive words of the conveyance, but to give them efficacy, and the operative words are found in the deed itself. *Thompson* v. *Hill,* 137 *Ga.* 308 (73 S. E. 640) ; Kenyon *v.* Nichols, 1 R. I. 411, Hale *v.* Swift, 23 Ky. Law R. 497 (63 S. W. 288)." That decision had reference to the particular language included in the descriptive clause of the deed in question. The Justice delivering the opinion took pains to point out that the plat referred to in the deed was less definite than the particular description contained in the deed that was expressed in words. The construction put upon the deed involved in that case was favorable to the grantee, and it was not intended by anything said in that decision to

modify the ruling in *Thompson* v. *Hill* (supra). In the case under consideration the words of particular description "separating the property herein conveyed from lots numbers one, two, three, and four in subdivision of said lots" themselves refer to the said "subdivision," thereby making the subdivision a part of the particular description. And in so far as said words stated that the alley separated the property from said lot "four" it was a false description, because the said "subdivision" showed that the alley did not separate lot "four" from anything. The plat which was referred to is a more definite description than the particular words of description, and shows an intent upon the part of the grantor to include in lot number five the strip of land which is the subject-matter of the present suit. The deed being thus construed, the court erred in granting a nonsuit.

*Judgment reversed. All the Justices concur.*