Harris vs. Hull, executor.

HARRIS *vs.* HULL, executor.

[Jackson, Chief Justice, being disqualified, did not preside in this case.]

| 70 | 831 |
|----|-----|
| 91 | 693 |
| 70 | 831 |
| 99 | 221 |
| 70 | 831 |
| 101 | 306 |
| 70 | 831 |
| 119 | 198 |
| 70 | 831 |
| 129 | 794 |

1. In construing conveyances of land, effect is to be given to every part of the description, if practicable; but if the thing intended to be granted appears clearly and satisfactorily from any part of the description, and other circumstances of description are mentioned which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as false or mistaken. What is most material and most certain in a description shall prevail over that which is less material and less certain.

(a.) Courses and distances and computed contents yield to ascertained boundaries and monuments.

(b.) In so far as the charge gave preference to the description in certain deeds referred to in a mortgage and deed in settlement thereof over boundaries specified therein, it was error, but it was not error which hurt the plaintiff.

2. The other exceptions made by the plaintiff to the rulings of the court in admitting and rejecting testimony are not well taken; the grounds upon which they were made are not sustained by the facts in evidence.

3. A deed given in payment of a debt, although usury may have entered into the consideration, is not thereby rendered void; *aliter*, where the deed is given to secure a debt.

4. Such of the plaintiff's requests as were refused were properly so.

5. It was error to grant a new trial.

September 18, 1883.

Deeds. Title. Practice in Supreme Court. Charge of Court. Before Judge BOWER. Worth Superior Court. April Term, 1883.

Hull brought suit against Harris on a promissory note for $5,000, with certain credits thereon, made by the defendant to J. S. Linton or bearer, on December 28, 1871, and indorsed by Linton. The defendant pleaded failure of consideration in this, that the note was given for the purchase money of certain lands, including land lot 95 in Worth county, and was transferred after due; that he paid on it $4,100; that lot No. 95, of the value of $1,178.50 was, at the time of the sale, under mortgage, of which defendant had no notice; that Linton made a warranty deed to the mortgagee for the land; that the mortgage was also foreclosed; the property sold by the sheriff and bid in by the mortgagee.

The principal question in the case was whether the mortgage and deed under it included lot No. 95 or not. Reference to the following map will explain the positions assumed by counsel:

Plaintiff contended that, according to the description in the mortgages and deed from Linton to Rowley and Craig, the south line ran along the north side of lot No. 89 till it reached No. 95, thence north to the corner of No. 94, thence along the north line of No. 95—thus excluding No. 95. Defendant contended that the south line of the property ran along the north line of Nos. 89 and 96 till it reached No. 144, thence north,—thus including No. 95.—The dark lines show the outline of the property.

The plaintiff introduced the note and closed. Defend-

ant showed in brief, as follows: On November 26, 1868, Linton made to John Craig a mortgage containing the following description of the mortgaged property: " All that tract or parcel of land situated, lying and being in the county of Worth in said state, containing seventeen hundred and sixty (1760) acres, more or less, being lands bought by the said John S. Linton from Jones & Shine, T. M. Monger, J. P. Cox and J. D. Deriso, and bounded on the north by Swift creek, west by Flint river, south by the lands of Deriso and Holliday, and east by the lands of estate of Cox and B. T. Gleaton." On the same day he made to Harmon Rowley a mortgage containing substantially the same description. On February 17, 1871, Linton made to Rowley and Craig a warranty deed in satisfaction of the mortgages. The description in the deed was as follows: " All that tract or parcel of land lying and being in the county of Worth in said state, containing seventeen hundred and twenty acres, more or less, being the lands

bought by the said party of the first part from Jones & Shine, T. M. Monger, J. P. Cox and J. B. (D.?) Deriso, and bounded on the north by Swift creek, on the west by Flint river. on the south by the lands of Deriso and Holliday, and east by the lands of estate of Cox and B. F. Gleaton; the property hereby conveyed being the same that was mortgaged to the said parties of the second part on the twenty-sixth (26) day of November, eighteen hundred and sixty-eight (1868)."

On December 28, 1871, Linton sold to Harris and gave bond for titles to lots 95, 96, 143, and fractional lots 147 and 148, aggregating 765 acres, more or less, for $5,000. On February 4, 1873, the sheriff made a deed to Rowley, in pursuance of a sheriff's sale under Rowley's mortgage, describing the land as described in that mortgage.

To explain the description contained in the mortgages and deed from Linton, a deed from Jones, administrator, and Shine, administratrix, to Linton, was introduced, conveying lot No. 90, and a half interest in lots and fractional lots Nos. 39, 40, 91, 92, 93, 94; a deed from Jones to Linton to one half of lot No. 39; also a deed from Gilbert, executor of Collier, to Linton to the north half of No. 42, and fifteen acres of the north-east corner of No. 89; also a deed from J. W. Gleaton to Linton, to the north half of No. 41; also a deed from J. P.Cox to Linton to parts of lots Nos. 25 and 26, as appears by the map; also a deed from A. L. Holliday to Linton to the north half of Nos. 96 and 147 and fractional lot No. 146 on which Holliday resided; also a deed from H. Nichols to Linton to fractional lots 147 and 148, and south half of 143 and 96; also a deed from Haiden *et al.*, administrators, to Linton to lot No. 95, containing 202½ acres.

The following parol testimony was introduced by defendant:

Rouse testified, in brief, as follows: Holliday owned the north half of No. 96, and J. D. Deriso owned the north half of No. 89; these were known as the Holliday and

Deriso lands; and in order to make the Holliday and De-
riso line, the south boundary of the tract, land lot No. 95
must be included therein.   The fraction on the river west
of Nos. 95 and 96 belongs to the widow Deriso and some
children; never belonged to Linton; it runs to the river
and cuts off No. 95 and a small part of 94 from the river.
Linton held all the land which the witness pointed out as
the upper settlement, before the deed to Rowley.   After-
wards, in the fall or winter, Linton bought the north half
of 96, 143, 147 and 148, from Holliday, and afterward pur-
chased the balance of these lands from Nichols.   Some
time before the making of the deed made by Linton in
settlement of the two mortgages, he was engaged in making
a calculation, and told Rouse that he had been trying to see
if he could not make 1760 acres of land in his upper set-
tlement as specified in his mortgage to Rowley, without
including 95, and that it fell short 40 acres; he also asked
Rouse to keep it a secret.

Harris, the defendant, testified, in brief, as follows : The
notes sued on were given for the purchase money of the
property; the land was valued at $5.00 per acre; the
note was transferred after due; all was paid except $1000;
he went into possession at the time of the purchase, and
is so yet; did not know of the mortgage when he bought
from Linton, but thought the title was good.   Afterwards
Rowley told him that he had bought the land in satisfac-
tion of the mortgage and would evict defendant.   Defend-
ant found that he did not have good title, and then bought
from Rowley and gave a note for the purchase money at
$6.00 per acre; all has not yet been paid.

Rowley testified that the mortgage given by Linton and
the deed from him, and the· deed from the sheriff
included lot No. 95; that Linton's agent pointed out
the southern line to him at the time of the transac-
tion, and it ran along the land line between 95 and 90
on the north, and 96 and 89 on the south; that the
northern parts of 96 and 89 were known as the Holliday

and Deriso lands; and that he never heard of any claim to the contrary until Linton wanted tò sell to Harris; that what was called the upper place, and was included in the mortgage, had the Holliday and Deriso lands on the south, and what was called the lower place came up to the southern line of No. 95; that he also had a small mortgage on the lower place, but it was paid off; that he had the upper place surveyed, and it fell short of the amount called for in the mortgage 164 acres.

The defendant introduced in brief, the following evidence:

Hobbs and Smith testified that the Rowley and Craig mortgages were placed in the hands of Hobbs for foreclosure; that Linton filed a plea of usury, and the matter was settled by Linton's making an absolute deed to the mortgaged premises, but in order to protect him against any judgments against Linton, Rowley was to have the right to foreclose, which he did.

Linton testified that lot number 95 was not included in the mortgage or the deed made in settlement of it; that he pointed out the lines to Rowley and Craig and went to them, except where it was boggy; that number 95 was connected with the Holliday and Nichols place, the " settlement " being on the Holliday land, and the whole place was called the Holliday place; that if number 95 were included in the mortgage, there would be too much land. [The language of the record is, " the mortgage would have called for over 1,700 acres instead of over 1,700 acres "]; that in making the mortgage and deed he made a mistake of forty acres, the quantity being stated at 1,760, when it should have been 1,720 acres, more or less.

Plaintiff having died, his executor was made a party.

The jury found for the defendant. Plaintiff moved for a new trial on the following grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court admitted testimony of defendant

that he had the land surveyed and it fell short of 1,760 acres by 160 acres.—Objected to because he did not make the survey and could not state its result.

(3.) Because the court rejected evidence offered to show that the debt to settle which the deed was made was infected with usury.

(4.), (5.) Because the verdict was contrary to the charge: * * * " If the lands mortgaged were deeded by the mort- gagor, Linton, to Rowley, and accepted by him in full sat- isfaction of the mortgage, before foreclosure, the subse- quent foreclosure would not have legally affected the right of Harris, and an eviction under such foreclosure would not avail Harris in this suit. If he knew of this satisfac- tion of the mortgage, this rule would not be changed by the agreement of Linton and Rowley, that said mortgage might still be foreclosed to perfect the title or to prevent other judgments or liens from affecting the mortgaged premises in the hands of Rowley. The plaintiff insists that the evidence shows that the mortgaged debt was paid, and that a sale under the mortgage *fi. fa.* did not legally evict Harris, nor could disturb legally his possession. That his yielding to such sale and attorning to Rowley was ille- gal, whether he (Harris) knew the true facts or not."

(6.) Because the court then added the following quali- fication: " If he (Harris) knew of this satisfaction of the mortgage."—Plaintiff insists that the mortgage and *fi. fa.* were dead, and the ignorance of Harris of the payment could not revitalize the transaction, so as to give Rowley any right against Harris that he did not have against Lin- ton, his vendor, under the agreement.

(7.) [Request refused and certified to be substantially covered by the charge.]

(8.) [Substantially the same as (6). ]

(9.) Because the court charged as follows: " If the evi- dence should, under this rule given you, show that this lot 95 was embraced in the first sale to Rowley, and that Harris afterwards bought it, not knowing of the

first sale, and paid a fair value or gave his note, and Harris bought the land from Rowley to protect his title, and paid for it an amount equal or in excess of the amount still due on the note, then you should find for the defendant. Plaintiff insists that the evidence shows that Harris took possession in 1871 and retained possession for over twelve months, until after the sheriff's sale in 1873, without actual notice of Rowley's claim up to that time; and that Rowley's deed was not recorded within one year; that this state of facts gave Harris a better title under the registration laws than Rowley's."

The motion was granted, and defendant excepted.

On the argument, counsel for both parties united in a request that the principles which would govern the case be decided without appealing to the discretion of the judge in granting new trials.

G. J. Wright; D. H. Pope, for plaintiff in error.

R. Hobbs; D. A. Vason, for defendant.

Hall, Justice.

1, 2. This case has been tried three times, and each trial has resulted in a verdict for the defendant. The last verdict was set aside and a new trial ordered by the judge presiding, and to this judgment exception is taken. Unless there was some error of law prejudicing the plaintiff, this verdict should not have been set aside, especially as the evidence, to say the least, was conflicting, and there was enough in it to authorize, if not to require, the finding. It is certainly to the interest of parties, as well as the public, that there should be an end of litigation. One great purpose in establishing this court was to terminate suits, and with this view, it is made its duty not only to grant judgments of affirmance or reversal, but any other order, direction or decree required, and if necessary to make a final disposition of the cause (Code, §218), and it is em-

powered to give to the cause in the court below such direc-
tion as may be consistent with the law and justice of the
case. *Ib.*, §4284. Litigation should never be protracted
where this, with due regard to the rights of parties, can
possibly be avoided. *Interest rei publicæ ut sit finis litium*
is a maxim so old that its origin is hidden in a remote antiq-
uity, and the policy which it inculcates is so essential as
not to admit of question or dispute.

This suit is prosecuted to recover the amount of a promis-
sory note given by the defendant to John S. Linton for
the purchase money of lot of land number 95, in the——
district of Worth county, and by him transferred after
it became due to plaintiff's testator, who in his lifetime in-
stituted suit thereon. The defence set up to the suit, was
that the land was encumbered by a mortgage given by
Linton to one Rowley previous to the sale to defendant,
and which fact became known to defendant some time
after the purchase and after he had occupied and improved
the premises; that he has been compelled to surrender the
land to the purchaser under the mortgage, and to repur-
chase it at an advanced price, and hence the consideration
for which the note sued on was given, has entirely failed.
The mortgage to Rowley called for seventeen hundred and
sixty acres of land, contained within certain boundaries,
and being the lands which Linton purchased from divers
persons named therein, among whom was Terrell T. Mon-
ger. The land was described as bounded on the north by
Swift creek, on the west by Flint river, and on the south
by the Holliday and Deriso lands. If the description by
metes and bounds is to control, and not that contained in
the deeds referred to in the mortgage and in the deed
subsequently made in the settlement and extinguishment
of the mortgage, then it is conceded that the defence is
well founded, unless it be true, as contended, that by fol-
lowing the description by metes and bounds, the mortgage
would cover more land than the quantity called for, by one
hundred and sixty acres, or than the deed made in extin-

guishment and settlement of the same, which was for seventeen hundred and twenty acres, would give an excess of two hundred acres above the quantity conveyed. Rowley testifies that he caused the land to be surveyed and measured, and according to that measurement it required lot number ninety-five to make the quantity conveyed to him. All the other deeds referred to in the mortgage as descriptive of the lands included in the mortgage, except that from Monger, were present at the trial, and these documents, it is insisted, including Monger's deed, showed that Rowley, got the quantity of land conveyed by the mortgage, less forty acres, and the precise quantity conveyed by the deed given him in settlement of the mortgage. It is also shown that Rowley viewed the premises and made an inspection of the boundaries before taking the mortgage; that Linton's agent pointed them out, especially the southern boundary, about .which alone there is in this litigation any dispute. The map in evidence makes it plain that the Holliday lands consisted of lots 143 and 96, and to the east of this last lot, and adjoining it, is the Deriso lot number 89. Lot 95 lies directly north of Holliday's eastern lot, 96, and north of that lies number 94, which no one disputes is included in the mortgage, and lots 90, 91 and 92, which are also unquestionably in that instrument, lie directly north of 89, the Deriso lot. Under well settled principles of law, it would seem that this verdict was not only authorized but required by the evidence in the case. It is well settled that, in construing conveyances of land, effect is to be given to every part of the description, if practicable; but if the thing intended to be granted appears clearly and satisfactorily from any part of the description, and other circumstances of description are mentioned which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as false or mistaken. What is most material and most certain in a description shall prevail over that which is less material and less certain. "Thus courses and dis-

tances shall yield to natural and ascertained objects."
" Indeed, it seems to be a universal rule that course and
distance must yield to natural, visible and ascertained ob-
jects."   This rule is founded " upon the legal presumption
that all grants and conveyances are made with reference
to an actual view of the premises by the parties thereto."
This presumption is strengthened in this case by the fact
that an actual view of the premises was had before the
conveyance was taken.   Again, " whenever in the descrip-
tion of land conveyed by deed, known monuments are re-
ferred to as boundaries, they must govern, although neither
courses nor distances nor the computed contents corre-
spond with such boundaries."   These are the rules of law
applicable to this case, as laid down by Mr. Tyler in his
work on the Law of Boundaries, pp. 119, 120, which he
supports by copious references to cases.   Add to these the
rule that where all other means of ascertaining the true
construction of a deed fail, and a doubt still remains, that
construction must prevail which is most favorable to the
grantee," ( *Ib.*, 123, and cases cited), and we think that the
defence made in this case becomes complete, if not irresist-
ible.   See also 20 *Ga.*, 689 ; 54 *Ib.*, 608.   In so far as the
charge of the presiding judge, therefore, gave preference
to the description contained in the deeds referred to in the
mortgage and the deed made in settlement thereof, in_
stead of the boundaries specified therein, it was error, but
error that did not hurt the plaintiff.

3, 4. The other exceptions made by the plaintiff to the
rulings of the court in admitting and rejecting testimony
are not well taken, the grounds upon which they were
made are not sustained by the facts in evidence.   As to
one of them, it has been repeatedly determined by this
court, that a deed given in payment of a debt, although
usury may have entered into the consideration, is not
thereby rendered void, it is otherwise where the deed is
given to secure a debt.

5. Such of the plaintiff's requests to charge as were re-

fused by the court ought, upon the principles herein determined, to have been refused. The judgment of the court below granting the new trial was, under all the circum stances, erroneous, and must be reversed.

Judgment reversed.