## MOORE et al. v. KISER et al.; et vice versa.

In an action of complaint for land the plaintiffs claimed title as residuary legatees under a will. The will provided, in one item: "All the rest and residue of my estate not herein devised and bequeathed specifically, 1 direct shall be shared by my children and wife, not including my grandson Holcomb G. Moore, subject to the provisions of the 7th item of this my will." Item 7th was: "I have given my older children, to wit, Adreanne W. Armor and Sarah Lee Harwell, as follows: to my daughter first named three thousand dollars in money and property, and to my daughter last named twenty-four hundred dollars ($2400). My purpose in this will, subject to the exceptions hereinafter mentioned, is to equalize my children as far as I can do so in the distribution of my property; and to that end I direct that in the division of the residue of my estate each child shall be made to account for all the property given him or her herein, or in any other way, as advancements at the estimates made by myself, and that my wife shall account likewise before sharing in the said residue. I except from the general rule of equality the cases of my sons, Henry Antoine and John Whitfield Moore, and direct that the mill property and water-power herein given them may be had by them over and above a share of my estate." Item 9th was: "Upon the death of my children without issue, I direct that the share of such child shall revert to my estate and be divided equally amongst my surviving children and the children of such of my children as may be deceased, share and share alike. Upon the death of any one of my children leaving issue, I direct that the property herein given to such child shall go to his or her children and wife, in case of a son, in such parts and proportions as he or she may direct by last will and testament; provided no wife of any son or grandson so dying shall take more than a child's share under any such will." The plaintiffs were the widow and a son and a daughter of John Whitfield Moore, who died after the death of the testator. *Held:*

1. In order for an interest in the land to vest in the plaintiffs under the residuary clause of the will, there must have been a residuary estate after payment of all the debts of the testator and specific legacies, after which there must have been some interest in the land coming to John Whitfield Moore after accounting with his colegatees according to the scheme of equalization specified in the above items of the will. The plaintiffs failed to allege that there was a residuary estate after payment of the debts of the testator and specific legacies, and also failed to allege that after accounting with the legatees John Whitfield Moore was entitled to an interest in the land in dispute; and the petition was subject to general demurrer.

2. After erroneously overruling the general demurrer, the subsequent trial of the case was ineffectual. As the judgment is reversed on the controlling question in the case, which was presented by the cross-bill of exceptions, the original bill of exceptions will be dismissed.

DECEMBER 17, 1915.

Complaint for land. Before Judge Ellis. Fulton superior court. October 13, 1914.

George Westmoreland, George A. Merritt, Noel P. Park, and Samuel H. Sibley, for plaintiffs.

Dorsey, Brewster, Howell & Heyman, for defendants.

ATKINSON, J. Mrs. Eliza C. Moore, Mrs. Lilias E. Wright, and Girard A. Moore instituted an action against W. H. Kiser and John F. Kiser, to recover 5/32 undivided interest in a described lot of land in the city of Atlanta, fronting 19 1/2 feet,.more or less, on the west side of Whitehall street, and extending westwardly the same width for a distance of 175 feet to Broad street, together with a proportionate interest in the value of the property for rent, which was alleged to be of the monthly value of $300. The defendants filed a demurrer, which was overruled, except as to the third ground, which was sustained, with the right of the plaintiffs to amend within ten days; and an amendment was made. At the trial, upon conclusion of the evidence offered by the plaintiffs, the judge, on motion, granted a nonsuit; and the plaintiffs excepted. The defendants filed a cross-bill of exceptions assigning error on the judgment overruling the demurrer. The defendants were alleged to be in possession of the property to which the plaintiffs asserted rights to undivided interests. The plaintiffs were the widow and one daughter and one son of John Whitfield Moore, who died in February, 1911; there being one other son, Park G. Moore, who was not a party to the action. John Whitfield Moore was a son of Green Moore, who died in 1872. It was not alleged that the plaintiffs had ever been in possession of the property. They claim title under the will of Green Moore, who died in possession of the property. The will, to which there was a codicil, had been duly probated, and admitted to record. The will was embodied in the petition, and, omitting formal parts, was as follows:

"Item 1st. I wish my executor to discharge all debts which I may justly owe at my death.

"Item 2nd. In consequence of the affliction of my son Henry Antoine Moore, whereby he is not so well fitted as my other children to struggle with the world, I think I ought to make a difference in his favor between him and my other children in the distribution of my property. I therefore give and devise unto my said son all of my right, title, and interest in the mill property on the Oconee River, now jointly owned by James B. Park, James N. Armor, and myself, with all of my right, title, and interest in

the land adjacent to said mills up and down the river, as far as the land and water-power of said company extends, with my interest in the ferry, mill-seat, and every other right, member, and appurtenance to the same in any wise belonging, subject to the following exception, limitations, and conditions, to wit: that if it be practicable to use the water-power of said company for any other purpose without injuring the mills now running or which may be . hereafter put up on the same sites, then so much of said water-power as may be so diverted is excepted out of devise and gift made in this item, and shall go to my son, John Whitfield Moore. I further give and devise unto my said son Henry Antoine my Furlow place, containing three hundred and twenty-four acres, which I estimate to be worth eight dollars per acre; and I give and devise to my said son Henry Antoine my Walker place, which I estimate at five dollars per acre. I also give and bequeath unto my said son last named one good mule, two good cows and calves, one feather-bed and bedstead, my gold watch, and one thousand pounds of pork.

"Item 3rd. I give, devise, and bequeath unto my son John Whitfield Moore my Cunningham place on the road to the ferry, containing four hundred and thirty-five and one half (435½) acres of land; also as much of my land adjacent thereto as I have had cut off by recent survey, containing four hundred and thirty acres. I estimate the land of the Cunningham place to be worth twelve dollars, and the land included in said survey to be worth five dollars, per acre. I also give and bequeath unto my said son one good mule, two good cows and calves, a feather-bed and bedstead, and one thousand pounds of pork.

"Item 4th. I give unto my beloved wife, Eliza L. Moore, the house wherein I now reside; also two hundred acres of land to be laid off around it so as not to interfere with any other devise in this my will. I also give and bequeath unto my said wife two good mules, two good cows and calves, one feather-bed and bedstead, and one thousand pounds of pork. I further will and direct that my said wife shall have all of my household and kitchen furniture during her life, and at her death that the same shall be divided amongst my children, share and share alike.

"Item 5th. I give and devise unto my daughter, Ann Fanny Elizabeth Adams, the place in Putnam county known as the Ross

place, containing twenty-five hundred and fifty acres, on which she now resides; and I count it to be worth ten (10) thousand dollars.

"Item 6th. I give and devise unto my grandson, Holcomb G. Moore, the place known as the Collier place; that is to say, so much thereof as lies north or northwesterly of a line to be run between a post-oak in the graveyard field of Crawford Perdue, running west-wardly to a branch on the Furlow place and down the branch until it reaches a white oak on original corner tree on the Clough place or Furlow place. I also devise unto him one hundred and forty acres of land which I bought of Dr. Moody.

"Item 7th. I have given my older children, to wit, Adreanne W. Armor and Sarah Lee Harwell, as follows: to my daughter first named three thousand dollars in money and property, and to my daughter last named twenty-four hundred dollars ($2400). My purpose in this will, subject to the exceptions hereinafter mentioned, is to equalize my children as far as I can do so in the distribution of my property; and to that end I direct that in the division of the residue of my estate each child shall be made to account for all the property given him or her herein, or in any other way, as advancements at the estimates made by myself, and that my wife shall account likewise before sharing in the said residue. I except from the general rule of equality the cases of my sons, Henry Antoine and John Whitfield Moore, and direct that the mill property and water-power herein given them may be had by them over and above a share of my estate.

"Item 8th. All the rest and residue of my estate not herein devised and bequeathed specifically, I direct shall be shared by my children and wife, not including my grandson Holcomb G. Moore, subject to the provisions of the 7th item of this my will.

"Item 9th. Upon the death of my children without issue, I direct that the share of such child shall revert to my estate and be divided equally amongst my surviving children and the children of such of my children as may be deceased, share and share alike. Upon the death of any one of my children leaving issue, I direct that the property herein given to such child shall go to his or her children and wife, in case of a son, in such parts and proportions as he or she may direct by last will and testament; provided no wife of any son or grandson so dying shall take more than a child's share under any such will.

"Item 10th. I direct that the property herein given, devised, and bequeathed to my sons Henry Antoine, John Whitfield, and my grandson Holcomb G. Moore, shall be held by them and each of them subject to the direction and control of my son-in-law, James N. Armor, until they each attain forty-five years of age; and I hereby commit the same to my said son-in-law in trust for the use and benefit of my said sons and grandson respectively for the terms above stated, directing him hereby to give each of two sons and grandson the largest enjoyment of the property aforesaid consistently with its preservation.

"Item 11th. What I have given herein to my wife, Eliza L. Moore, is in lieu of dower or every other provision made by law for widows."

There was a codicil which, omitting formal parts, was as follows: "I, Green Moore, having made and published the foregoing as my last will and testament, do make, publish, and declare this as a codicil thereto. In Item 2nd of my will I give to my son Henry Antoine my Walker place; but I only intended to give him so much thereof as lies west of the road leading from Greensboro to Park's Ferry, except the part cut off in the survey made by J. F. Wright to my son John Whitfield. I give and bequeath to my daughter Sarah Lee Harwell my Rowland place and my Wade land, which I estimate at six dollars per acre, subject to the provision of the 7th Item of my will. I hereby appoint my son John Whitfield Moore, and my sons-in-law James N. Armor and James M. Harwell, my executors of this my last will and testament."

When the testator died he left surviving him his widow, Eliza L. Moore, and five children, as follows: John Whitfield Moore, Henry Antoine Moore, Ann Fanny Elizabeth Adams, Adreanne W. Armor, and Sarah Lee Harwell, and a grandson, Holcomb G. Moore, a child of a deceased son, all of whom, as indicated above, were mentioned in the will. Henry Antoine Moore died in 1903 without having married, and left surviving him his brother John W. Moore, and his sisters Mrs. Adams and Mrs. Armor; his remaining sister having died previously. The plaintiffs (the widow and two of the children of John Whitfield Moore) based their claim of title upon the will of Green Moore, and particularly the eighth and ninth items thereof. Referring to the will, it was alleged in paragraphs 6 and 7 as follows: "After said specific

devises to his widow and each of his children, and to a grandson, Holcomb G. Moore, the testator by the 8th clause of his said will devised all the rest and residue of his property to his said children and wife, the children taking a life-estate therein, and giving widow an absolute estate. By the terms of the 9th item of said will the testator directed that upon the death of either of his said children without issue, that the share of such child should revert to his estate and be equally divided amongst the surviving children and the children of such child as might be deceased, share and share alike. And upon the death of any such child leaving issue, that the property given and devised in said will to such child he gave to his children and wife, if a son, and to her children, if a daughter." It was nowhere alleged whether or not John Whitfield Moore left a will; nor was it alleged whether or not there had been a settlement of the estate of Green Moore.

1. In order to recover in this action against the defendants, W. H. Kiser and John F. Kiser, the plaintiffs must do so on the strength of their title; and it is essential that they should allege title sufficient to form the basis of a recovery. Had the executors of the will of Green Moore instituted the suit, an entirely different case would have been presented. Here the plaintiffs elected to sue individually as legatees under the will, and to treat the will merely as a muniment in their chain of title. It is necessary, therefore, to allege such state of facts as would show affirmatively that they held a vested interest under the will at the time of the institution of the action. We think this was not done. The will is set forth in full. It will be observed that the testator devised specific property to his widow and his children. He had previously made an advancement of certain sums of money to his daughters. After the specific devises were carved out of his estate, he devised the residue, not only of his personalty but of his realty, likewise to the same persons to whom he had made the specific devises, with the exception of his grandson, and in the apportionment of the residue among the devisees they were to account for all advancements received by them under the will or otherwise. This is borne out by items 8, 7, and 9 of the will, which deal specifically with the residue and disposition thereof. If the plaintiffs were entitled to any interest in the property in dispute, it was by virtue of the residuary clause of the will. Before any title could vest in them under that

30

clause, two things would be essential: first, all of the testator's debts and specific legacies must have been paid; and secondly, if, after payment of the debts and specific legacies, there was any property left to pass under the residuary clause, there must have been an equalization among the several heirs, taking into consideration the value of the specific legacies of each, and any other advancements which they might have received from the testator; and upon such equalization there must have been something coming to John Whitfield Moore. If the debts consumed all of the property over and above the specific legacies, there would be nothing to pass under the residuary clause, and consequently nothing upon which John Whitfield Moore or his wife or children could base a claim. A similar result would occur if, there being a residuary estate, John Whitfield Moore should have received, either by the value of his legacies or by other advancements, enough more than the other legatees to consume the portion of the residuary estate which would otherwise come to him. Upon a proper construction of the will, before any interest to the property in dispute could pass to John Whitfield Moore or his wife or children, the conditions above mentioned must have been met. There was no allegation in the petition that they had been met, and it follows that the plaintiffs failed to allege a title sufficient to form the basis of a recovery. It was erroneous, therefore, to overrule the defendants' general demurrer.

2. As the petition should have been dismissed on general demurrer, the subsequent trial was ineffectual. As it transpires, the controlling question was presented by the cross-bill of exceptions; and the judgment being *reversed* on the cross-bill, the main bill of exceptions will be *dismissed*.

*All the Justices concur, except Lumpkin, J., disqualified.*