CLARK *v.* ROBINSON.

1. A security deed contained the following description of land: "Also that part of lot 169 beginning at the northeast corner of said lot, thence south 1 degree and 30 minutes west 1270 feet, thence south 88 degrees and 30 minutes west 1750 feet, thence north 1 degree and 30 minutes

---

Mortgages, 41 C. J. p. 404, n. 29; p. 952, n. 31, 36; p. 1000, n. 87, 88.

east 1270 feet to the north lot line, thence north 88 degrees and 30 minutes east 1750 feet to the beginning." The deed contained a power of sale, and in the exercise of the power the advertisement of the land contained the language "east 1270 feet to the beginning," and should have read "east 1750 feet to the beginning." *Held,* that in view of the accurate description of three sides of the land the substitution of the figures "1270" for the figures "1750" do not render the description of the land void for uncertainty.

2. Under the pleadings and the evidence the court did not err in granting a temporary injunction and in appointing a receiver.

No. 5137. JUNE 23, 1926.

Injunction and receivership. Before Judge Yeomans. Seminole superior court. September 12, 1925.

L. R. Robinson brought a petition against Mrs. Ruie Clark, praying for injunction, receiver, etc. The petition alleged in substance the following: Petitioner is the owner and claims title to a certain described tract of land of which Mrs. Ruie Clark is in possession. She has appropriated to her own use, since January 19, 1925, the profits and rents of the yearly value of $750. On June 19, 1919, she executed and delivered to Pearsons-Taft Land Credit Co. a promissory note for the principal sum of $993.90, secured by a deed to the property in controversy. This security deed was made subject to a prior loan deed held by the Pearsons-Taft Land Credit Co., to secure a loan of $5000 by Mrs. Ruie Clark. The security deed provides that should she breach any of the covenants and agreements contained therein, the whole of the indebtedness secured thereby, at the option of the legal holder of said note, without notice, shall become due and collectible. She did breach the covenant contained in said instrument, in that there was a default in the payment of the installment of said note due June 1, 1923; and the grantee, under the provisions contained in the security deed, advertised the lands for sale in the Bainbridge Post-Searchlight, the legal organ of Decatur County, in the issues of August 9, 16, 23, and 30, 1923, and in the Donalsonville News, the legal organ of Seminole County, in the issues of August 3, 10, 17, 24, and 31, 1923, and sold the land in accordance with the provisions of the deed and the notices, on September 7, 1923, to W. H. VanLandingham, he being the highest and best bidder, for cash; and the Pearsons-Taft Land Credit Co., as attorney in fact for Mrs. Ruie Clark, executed and delivered to Van-Landingham a deed to the land. On December 21, 1923, Van-

Landingham executed and delivered to the Bank of Donalsonville a quitclaim deed to the property in controversy. On March 5, 1924, the Bank of Donalsonville executed and delivered to W. H. Flowers, of Fulton County, Georgia, a security deed, conveying the property in controversy. Default having been made by the Bank of Donalsonville in the payment of the debt to secure which the deed was given, the property was sold at public outcry under the provisions of the security deed, and the property was bought in by W. H. Flowers on January 19, 1925. After the security deed last referred to was executed it was discovered that a mutual mistake had been made in the description of the property, and to correct this mistake T. R. Bennett, superintendent of banks of the State of Georgia, brought a petition in the superior court of Seminole County against the Bank of Donalsonville, wherein he prayed an order authorizing him to execute a deed to W. H. Flowers for the purpose of correcting the mutual mistake. On June 23, 1925, the court passed a final order authorizing and directing the execution of such a deed, which was done. On August 1, 1925, W. H. Flowers executed and delivered to petitioner, L. R. Robinson, a quitclaim deed conveying the land in controversy. All of said deeds referred to conveyed the title and interest of all parties in and to the land, subject to the outstanding loan deed in favor of Pearsons-Taft Land Credit Co. for $5,000. Petitioner claims title to the land by reason of the security deeds, sale deeds, and quitclaim deed conveying title from Mrs. Clark to him. He and his predecessors in title have demanded possession of the premises of Mrs. Clark, and she refuses to deliver possession, is cultivating the land, and appropriating the mesne profits to her own use and benefit. Petitioner is entitled to the rents and profits from the land. Mrs. Clark is insolvent; and unless a court of equity intervenes to take charge of the lands and crops, petitioner will suffer irreparable loss and damage. He is paying annually $300 interest on the long loan on the property, and has paid the taxes for the years 1924 and 1925. The crops of the land are perishable, and there is an immediate necessity for the appointment of a receiver to take charge of and gather the crops, dispose of them, and hold the money subject to the order of the court. The receiver should take charge of the premises, rent the same for the year 1926, and collect the rents and hold them sub-

ject to the court's order. The prayers are, for process; that the defendant be restrained and enjoined from disposing of any of the crops on the premises; for judgment against the defendant for the rents and profits for the year 1925, in the sum of $750; for decree of possession of the land; and that the court take charge of the premises through its receiver, rent the same, collect the rents, and hold the money in court subject to further order; that the defendant be required to enter into bond payable to the plaintiff for any judgment that he may recover against her; and for general relief.

Defendant filed her general and special demurrers to the petition. She also filed an answer in which she admitted and denied certain paragraphs of the petition, and answering specifically averred that she is the owner of the property and in possession of same, and that plaintiff has never demanded possession of the lands; that the deed described in the petition is void for want of description, that the description is vague, indefinite, uncertain, and impossible; that the security deed from Mrs. Clark to Pearsons-Taft Land Credit Co. is void for want of proper description; that at the time said property was put up for sale at public outcry, all prospective bidders were warned that this defendant would not deliver possession, because of the inadequate description of the property; that she had not received certain credits to which she was entitled; that the purchaser of the property was present and heard the announcement before he bid on the property; that the land had not been advertised in accordance with the terms of the security deed; that at neither of the sales was said property advertised in accordance with the terms and conditions of the security deeds; and that the description contained in the advertisement was entirely different from the description contained in the security deed and in the deed of conveyance made to the purported purchaser at each of the sales.

After the introduction of the evidence at the interlocutory hearing, the judge appointed a receiver and granted the injunctive relief prayed. To this judgment the defendant excepted.

*Drake & Drake* and *P. D. Rich,* for plaintiff in error.

*W. L. Bryan* and *J. T. Goree,* contra.

HILL, J. (After stating the foregoing facts.) The security deed from Mrs. Clark to the Pearsons-Taft Land Credit Company con-

tained the following description of a portion of the land conveyed: "Also that part of lot 169 beginning at the northeast corner of said lot, thence south 1 degree and 30 minutes west 1270 feet, thence south 88 degrees and 30 minutes west 1750 feet, thence north 1 degree and 30 minutes east 1270 feet to the north lot line, thence north 88 degrees and 30 minutes east 1750 feet to the beginning." It appears that all of the land in controversy was originally in the County of Decatur, and that when the new County of Seminole was created a part of the land was left in Decatur County and a part of it in Seminole County. The particular tract above described, which description it is insisted is so indefinite as to be void, is in Seminole County. The land was advertised for sale in the Donalsonville News under dates of August 10, 17, 24, and 31, 1923. This newspaper is the official organ of Seminole County. The description of the land as it appears in the above-named newspaper followed exactly the description of the land as described in the security deed. It also appears from the record that in the description of the above-described tract of land in the advertisement in the Bainbridge Post-Searchlight a typographical error occurred, the description being identical with that advertised in the Donalsonville News except that the words and figures "east 1750 feet to the beginning" were printed "east 1270 feet to the beginning." The advertisement should have read, "east 1750 feet to the beginning." It will be seen from the above description of the land that the beginning point was in the northeast corner of the lot at a definite and fixed point, and that three sides of the land described were accurately given, and that the advertisement was incorrect in giving the number of feet of the last line as "1270 feet to the beginning." The beginning point having been definitely ascertained as the northeast corner of the lot, we are of the opinion that this description was sufficiently accurate as not to subject it to the criticism that it was void for uncertainty. In *Harris* v. *Hull*, 70 *Ga.* 831, this court held: "In construing conveyances of land, effect is to be given to every part of the description, if practicable; but if the thing intended to be granted appears clearly and satisfactorily from any part of the description, and other circumstances of description are mentioned which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as false or mis-

taken. What is most material and most certain in a description shall prevail over that which is less material and less certain. Courses and distances and computed contents yield to ascertained boundaries and monuments." And see the language used by Mr. Justice Hall in delivering the opinion of the court, on pages 840, 841. And in *Thompson* v. *Hill,* 137 *Ga.* 308 (73 S. E. 640), it was held: "If the land intended to be granted appears clearly and satisfactorily from any part of the description in a deed, and other circumstances of description are mentioned which are not applicable to that land, the grant will not be defeated, but those circumstances will be rejected as false or mistaken." And see Civil Code (1910), § 4187; *Hatton* v. *Johnson,* 157 *Ga.* 313, 326 (121 S. E. 404). So we are of the opinion that, taking the description in the advertisement altogether, it is clear and definite.

In addition to what has been said above it appears that the advertisement which appeared in the newspaper in the county where the land lies corresponded exactly with the description of the land contained in the security deed, and the inaccuracy occurred in the newspaper in the county other than that in which this particular land lies. Having held above that the advertisement of the land in the county where the land lies was in exact accordance with the description in the security deed, it is unnecessary to decide the other question raised by the plaintiff in error, viz., that the petition filed to correct the inaccuracy in the advertisement, and the order granted in pursuance thereof, were void for the reasons stated. Under the pleadings and the evidence the court did not err in granting a temporary injunction and appointing a receiver.

*Judgment affirmed. All the Justices concur.*