STEWART *et al. v.* LATIMER *et al., et vice versa.*

Nos. 14835, 14844.  June 8, 1944.

738

*M. G. Hicks* and *Alec Harris,* for plaintiffs.

*Barry Wright* and *Carlton Wright,* for defendants.

BELL, Chief Justice. ■ The court erred in not sustaining the defendants' motions to disallow paragraph A-1 of the amendment, in which the plaintiffs alleged they withdrew "any and all parts of said petition which asks that the following deeds be reformed," referring to the deeds from Mrs. Stewart to Citizens Building & Loan Association and from the successor association to the defendant Latimer. The objection urged in each motion was that this part of the amendment was too vague and indefinite, as to what parts of the petition the plaintiffs intended to strike. The original petition contained several allegations as to what the parties intended in executing and accepting the deeds in question. These averments might be relevant and proper in a suit to reform, and the plaintiffs might have considered them appropriate in seeking merely to recover the land. They did strike their specific prayer for reformation, but it could not be determined with reasonable certainty whether they intended to strike or leave the original allegations as to mere intention. A similar situation arose in *Funk* v. *Browne,* 145 *Ga.* 828 (4) (90 S. E. 64), where the plaintiffs amended their petition by striking therefrom "all, and as much, of the allegations" in four stated paragraphs as related to one of the two defendants. There was no objection to the allowance of the amendment, but after it was allowed there was a special demurrer to the amended paragraphs, on the ground that they did not set forth plainly, fully, and distinctly the plaintiff's complaint. This court said: "It was not a proper mode of amendment in general terms to strike so much of the allegations of the paragraphs as related to one of the defendants, without pointing them out, and leave the court and the adverse party uncertain as to what was withdrawn by the amendment. Such a method of amendment opened those paragraphs to special demurrer." In the instant case, however, we have omitted from the foregoing statement only those allegations of the original petition which specifically referred to reformation, and will thus give the plaintiff the benefit of the doubt as to all other averments, in considering the petition as amended. We may do this in the present case, for the reason that, in any view of this matter, it is our opinion that the petition as amended did

not state a cause of action, and the procedure we thus adopt can not be harmful to any of the parties.

■ The court erred in not sustaining the general demurrers to the petition as amended. As to this question, the case depends in the main upon the construction of the deed of April 26, 1933, from Mrs. Lula Stewart to Citizens Building & Loan Association; the description in that deed and in the deed from Citizens Federal Savings & Loan Association, successor corporation, to the defendant Latimer being identical. The deed from Mrs. Stewart described the property as follows: All that tract of land in what is known as Summerville Park, and now in the fourth ward of the City of Rome, Floyd County, Georgia, and being described as "beginning at a point 216 feet east of the southeast corner of lot No. 6 of the City Land Company's Addition to Summerville Park, shown on the map of said addition recorded in the office of the clerk of the superior court of Floyd County, Georgia, in plat book 1, page 157, and from said point running along the northerly side of Oakwood Street 100 feet to the east side of a culvert; thence northerly 178 feet, more or less, to the line of the Orr property; thence in a westerly direction along the line of the Orr property 100 feet; thence in a southerly direction 178 feet, more or less, to the beginning point on Oakwood Street; being a lot 100 feet wide off the easterly side of the property described in a security deed from Mrs. Lula Stewart to Citizens Building & Loan Association, recorded in deed book 142, page 294."

It will thus be seen that the south line of the property was described as beginning at a point 216 feet east of the southeast corner of lot 6 as shown upon a recorded map, and from said point running along the northerly side of Oakwood Street 100 feet to the east side of a culvert. Where a deed thus describes a line as beginning at a point to be ascertained by measuring a certain distance from a designated corner as shown upon a map, and running thence to another point which is stated as the east side of a culvert, the line so described as running from one fixed point to another will ordinarily control, regardless of what the deed may state as the distance between such points. In *Georgia Railroad & Banking Co.* v. *Hamilton, 59 Ga.* 171, it was held: "When a deed, referring to a plat annexed thereto, shows that the land conveyed was bounded on one side by a street, and on the other by the right-of-way of

the plaintiff, the land conveyed by the plaintiff to the defendant in such deed prima facie extends only from the street to the right-of-way, though the plat had five hundred feet written thereon as the distance from the street to the right-of-way, and though the distance between the two points was less than five hundred feet." In *Brantly* v. *Huff*, 62 *Ga.* 532, it was held that in tracing boundaries, courses and distances yield to permanent physical monuments, natural or artificial; and in the opinion it was said that "courses and distances are among the lowest indicia of boundary—not the highest." To the same effect, see *Riley* v. *Griffin*, 16 *Ga.* 141 (7, 11) (60 Am. D. 726). In *Harris* v. *Hull*, 70 *Ga.* 831, it was held: "What is most material and most certain in a description shall prevail over that which is less material and less certain. Courses and distances and computed contents yield to ascertained boundaries and monuments." In the opinion, it was stated that it seems to be the universal rule that courses and distances must yield to natural, visible, and ascertained objects, and that the rule rests upon the presumption that all grants and conveyances are made with reference to an actual view of the premises by the parties. In *Leverett* v. *Bullard*, 121 *Ga.* 534 (2) (49 S. E. 591), it was said that, "Whenever in a conveyance the deed refers to monuments actually erected as the boundaries of the land, it is well settled that these monuments must prevail, whatever mistakes the deed may contain as to courses and distances."

It appears from the petition that the deed described the southern boundary line as being 100 feet in length, but that it was afterwards found to be 118 feet. The plaintiffs claim the advantage of the difference, saying that the deed should be construed to convey a tract of only 100 feet off the east side of the larger tract which had been conveyed to Mrs. Stewart by Mrs. Vassiere. What would the plaintiffs have said, however, if the distance had been found to be 82 feet, or some other number of feet less than 100, as stated in the deed? In that case, it seems that, as to the quantity of land conveyed, the grantee would have been bound by the definitely marked or described termini, and thus would have acquired a tract less than 100 feet in width despite the incorrect statement as to the length of such boundary line. *Haley* v. *Ray*, 142 *Ga.* 390 (82 S. E. 1058). Whatever the parties might have said in such a situation, the rule of course should work both ways.

The plaintiffs contend, however, that the following language is controlling as to the quantity of land intended to be conveyed: "being a lot 100 feet wide off the easterly side of 'the property described in a security deed from Mrs. Lula Stewart to Citizens Building & Loan Association, recorded in deed book 142, page 294." The "security deed" mentioned in this clause is not otherwise referred to in the petition, and, since the petition must be construed most strongly against the plaintiffs, it can only be assumed that such security deed would not shed more light upon the case than does the deed from Mrs. Vassiere to Mrs. Stewart, the description in which is specifically set forth, and may be considered. *Gress Lumber Co.* v. *Coody,* 94 *Ga.* 519 (3) (21 S. E. 217). The part of the deed here relied on as showing an intention to convey a lot only 100 feet wide off the easterly side of the property thus acquired by Mrs. Stewart is a mere general statement of contents, and must "yield to ascertained boundaries and monuments." *Harris* v. *Hull,* 70 *Ga.* 831, supra. It is declared in the Code, § 29-109, that, "If two clauses in a deed are utterly inconsistent, the former shall prevail; but the intention of the parties, from the whole instrument, should, if possible, be ascertained and carried into effect." In *Collinsville Granite Co.* v. *Phillips,* 123 *Ga.* 830 (11), 841 (51 S. E. 666), this court quoted approvingly from well known texts as follows: "If recitals in a deed are inconsistent or repugnant, the first recital does not necessarily prevail over the latter, but the whole language of the deed is to be construed together in order that the true construction may be ascertained. In such a case the court will look into the surrounding facts, and will adopt that construction which is the most definite and certain, and which will carry out the evident intention of the parties." 13 Cyc. 627. "In the description of land it is usual, after the description by metes and bounds or subdivisions, to add a clause stating that the land described contains so many acres. But unless there is an express covenant that there is the quantity of land mentioned, the clause as to quantity is considered simply as a part of the description, and will be rejected if it is inconsistent with the actual area, when the same is capable of being ascertained by monuments and boundaries. The mention of the quantity of land conveyed may aid in defining the premises, but it can not control the rest of the

description." 2 Devlin on Deeds (2d ed.), § 1044. The principles thus stated we consider applicable here.

The deed to Mrs. Stewart described the beginning point of the southern line as being 216 feet east of the southeast corner of lot number 6 of an addition as shown upon a recorded map. Her present contention would alter this part of the description, and would make the deed read "234 feet east of the southeast corner of said lot number 6." The petition alleged further that it was always understood that the defendant Latimer was only to get exactly a tract fronting 100 feet wide on the northerly side of Oakwood Street, and in the amendment it was averred that when he purchased said tract the corners were pointed out to him, that an iron stob was driven into the ground on the southwest corner of said lot, on Oakwood Street, exactly 100 feet from the culvert that is the southeast corner of said lot, and at all times it was the intention of the plaintiffs and the defendants that said defendants were to get a lot off the east side of said original tract exactly 100 feet wide and 178 feet more or less in depth. Unless the deeds are reformed, these averments can not be considered, in view of the specific description of the southern line as contained in the deed from Mrs. Stewart to the loan association. All such oral negotiations and expressions as to intention were merged in that instrument, and without reformation can not be shown for the purpose of contradicting its terms. While extrinsic evidence may in a proper case be admitted for the purpose of applying a description to subject-matter, it is not competent to show that there was an oral agreement between the grantor and grantee in a deed of conveyance, made prior to or contemporaneously with its execution, fixing metes and bounds different from those specifically set forth in the deed itself. *O'Neal* v. *Ward,* 148 *Ga.* 62 (3) (95 S. E. 709). Nor can the plaintiffs here reverse the course of the line as stated in the deed, by taking the east side of the culvert as the beginning point, and running westerly 100 feet. Natural monuments and boundaries must ordinarily be followed rather than reversed by running the line backwards and in reverse order from that called for in the description. 11 C. J. S. 550, § 9 (3).

The plaintiffs make the further contention that since the deed describes the northern boundary as running "in a westerly direction along the line of the Orr property 100 feet," the southern boundary

line should be determined accordingly, or else the disputed strip
would be cut into triangles, which it is insisted was not in accord-
ance with the intention of the parties as expressed in such deed.
On the contrary, we think the southern boundary, in view of the
specific points of beginning and ending, should control, and that
the northern boundary should be treated as corresponding there-
with, especially as it appears from the deed itself that the land was
intended to be in the form of a parallelogram. In this view, the
deed would convey a tract in the shape of a parallelogram, with the
northern and southern boundaries equal in length, but with such
length determined by the points of beginning and ending specifi-
cally designated in the clause as to the southern boundary. See,
in this connection, 11 C. J. S. 549, § 9 (1, 2).

It follows that the petition did not state a cause of action at law
for recovery of the strip of land in question, and the court erred in
overruling the general demurrers of the defendants. This being
true, it is unnecessary to pass upon the grounds of special demurrer
urged by the defendant Latimer. See generally, in this connection,
Code, § 85-1601; *Hammond* v. *George,* 116 *Ga.* 792 (43 S. E. 53);
*Thompson* v. *Hill,* 137 *Ga.* 308 (73 S. E. 640); *Wooten* v. *Solomon,*
139 *Ga.* 433 (77 S. E. 375); *Carswell* v. *Sanders,* 182 *Ga.* 251 (185
S. E. 282); 16 Am. Jur. 601, § 289.

The conclusion reached does not conflict with the ruling in *Clark*
v. *Robinson,* 162 *Ga.* 395 (134 S. E. 72), where the line on one
side of the tract was described as being 1750 feet, and on the op-
posite side as being 1270 feet, and it was held that in view of the
accurate description of three sides of the land, the substitution of
the figures "1270" for the figures "1750" did not render the
description void for uncertainty; nor with the decision in *Holder* v.
*Jordan Realty Co.,* 163 *Ga.* 645 (136 S. E. 907), where a deed
referred to a plat which was more definite than the particular words
of description contained in the deed itself, and it was held that the
deed, when considered with the plat, was sufficient to include the
land in controversy.

■ In the view that we take of the case, it falls within the rule
that where this court has before it both a main bill and a cross-bill
of exceptions, and the latter presents a question which is controlling
upon the case as a whole, it will be disposed of first; and if the
judgment therein excepted to is reversed, the writ of error issued

upon the former will be dismissed. *Chidsey* v. *Brookes,* 130 *Ga.* 218 (5) (60 S. E. 529, 14 Ann. Cas. 975) ; *Moore* v. *Kiser,* 144 *Ga.* 460 (2) (87 S. E. 403) ; *DeLoach* v. *Georgia &c. R. Co.,* 144 *Ga.* 678 (3) (87 S. E. 889) ; *Wood* v. *Turner,* 147 *Ga.* 93 (92 S. E. 878). The error in overruling the general demurrers, complained of in the cross-bill of exceptions, rendered the further proceedings nugatory. Therefore it is unnecessary to consider the assignments of error in the main bill of exceptions, complaining of the order granting a nonsuit, and the writ of error based upon the main bill of exceptions will be dismissed.

*Judgment reversed on the cross-bill of exceptions; main bill dismissed. All the Justices concur.*