## JOHNSON. v. McKAY.

In March, 1895, A filed a petition to recover from B a tract of 1,143 acres of land (described by naming coterminous owners), alleging that the same descended to her as the sole heir of her husband, who was the brother of the defendant, B, but that said land was then held and claimed by B, under an improper construction of a contract made in 1856, relating to the division of land between her husband, his mother, and B. In April, 1895, B filed his answer, admitting possession and claiming title by virtue of such contract, the terms of his father's will, and the death of his brother without children. Pending the suit, the plaintiff A, in October 1895, mortgaged to J two tracts which went to form a part of the 1,143 acres. Thereafter a decree was entered that the land referred to in the petition, described by reference to then coterminous owners, was the property of B. *Held:*

1. That the description of the property as set out in the pleadings was sufficient to operate as lis pendens.
2. That parol evidence was admissible to show that the property mortgaged formed a part of the land referred to in the pending suit.
3. That, in the absence of fraud or collusion, J, the mortgagee, was bound by the decree, subsequently entered in the cause, finding against the mortgagor and in favor of B, even though he had no actual notice of the pendency of the suit when he took the mortgage.
4. The fact that costs were taxed against B in the equity cause was not sufficient to establish the existence of fraud so as to relieve J from being bound by the decree.
5. Even if the plaintiff's evidence as to possession by the mortgagor was sufficient to make out a prima facie case, there was like evidence sufficient to rebut the same.
6. Considering the want of certainty as to the description of the land mortgaged, the dispute as to possession, and the effect of the decree, there was nothing in the rulings as to admission or exclusion of evidence, or in the charge of the court, which required the grant of a new trial.

Argued November 26, 1904.— Decided January 28, 1905.

Levy and claim.    Before Judge Lewis.    Jones superior court. July 11, 1904.

On October 1, 1895, Mrs. Julia McKay executed a mortgage to J. C. Johnson on several tracts of land in Jones county. Among the property thus mortgaged was "all that tract of land in Jones county, Georgia, containing 153 acres, known as the Zachariah Emerson place, part of lot No. 125 in the 11th district, and part of No. not known." Also, "the Thomas Bazemore place, containing 196 acres more or less, joining the land of Sarah Emerson, Elisha Owens, Madison T. Bazemore, and H. D. McKay." The execution and levy followed the description in the mortgage.

H. A. McKay, executor of G. W. F. McKay, filed a claim. At the trial the plaintiff introduced a deed from Hammock, administrator of Zachariah Emerson, to Hugh McKay, dated September 5, 1854, describing the 153–acre tract as in the mortgage. Also, a deed from Thomas J. Bazemore to Hugh McKay, dated September 28, 1848, describing the 196–acre tract exactly as it was described in the mortgage. It was admitted that the mortgagor, Mrs. Julia McKay, was the sole heir at law of Hugh McKay. The plaintiff testified that Hugh McKay was in possession of these two places at the time of his death, and that after his death his widow went into possession thereof and remained in possession until she settled the suit between herself and George McKay. These two places adjoined and lay broadside of each other. She was in possession of these lands at the date of the execution of the mortgage to the plaintiff. On cross-examination he testified that he knew she was in possession, from going on the land with her, and in assisting in collecting the rent; did not remember what was the year. "I may have stated in the former trial that what I knew about her possession I got from her." Do not know when the husband died. "My recollection is that she was in possession in 1894. What I know about her possession is what she told me, and from going upon the place with her to collect the rent. The mortgage is dated October 1, 1895. She was collecting rents for that place at that time. I got the description of the land from the deeds placed in my possession." There was much evidence seeking to establish the boundaries of the Emerson and Bazemore places described in the mortgage; and a plat thereof made by Chiles, a surveyor, who ran the lines according to information derived from persons who pointed out a hedgerow which formed a part of one of the lines, and indicated what they thought were the lines. Maj. Jones, who pointed out some of the lines and assisted the surveyor, testified "I do not think I could go around any of these places now and show the lines. I do not know anybody that could." The surveyor who made the map testified that it was "correct according to the information obtained from Major Jones. Lot 125 in the 11th district is from five to seven miles away from these lands." Other witnesses for the plaintiff testified as to what they knew concerning the boundaries of the two tracts, stating also that what they knew as the Baze-

more and Emerson places would be contained in a tract of 1,143. acres as the same was described in the petition resulting in the. decree on which the claimant relied.

The evidence for the claimant tended to show that it was impossible to identify the lines of the Bazemore. and Emerson places, on which the plaintiff claimed to have a mortgage. The claimant. also introduced the record of a suit between Mrs. Julia McKay and George W. McKay. In it she set out a contract, made in 1856,. between Sarah McKay and her two sons Hugh and George. It. recited that Sarah McKay was the owner of certain property for· life, that she had theretofore given off to her two sons certain property, and that they had divided it among themselves. Under· this division 1,143 acres therein described had been assigned as. the portion belonging to Hugh McKay. "This agreement is only to affect property that has come into possession of the said George. and Hugh from the said Sarah, and not what may have come into. their possession from other sources, there having been land and railroad stock heretofore sold, and the proceeds of the same have. been equally divided between the two sons. They are hereby prohibited from calling on each other to respond for any part of ·the proceeds thereof, further than has already been done." There. was also attached a copy of the will of Hugh McKay, the husband and father of the parties to this agreement, in which the. devise of his estate was to his wife for life, and after her death the property was to be equally divided between the two sons, or the whole to go to the survivor of them, should they not then. be both in life, to them and their heirs forever. The theory of her petition was that under the contract of 1856 the 1,143 acres of land became the absolute property of the mortgagor Julia McKay's husband Hugh, but that when the latter died in 1891 George McKay improperly entered and took possession of the. land, claiming the same as his own. The petition alleged that George had possession of the papers, and petitioner was not able. accurately to describe the property. She did, however, describe the 1,143-acre tract as adjoining M. T. Bazemore on the east,. William Paulk on the north, Gordon. on the northeast, Finney on the southwest, George. McKay on the southeast, said lands lying· on the waters of Town creek in Jones. county. This petition alleged that these lands were acquired by Sarah McKay by pur-.

chase from various persons with the proceeds of property bequeathed for life by her husband; that Sarah McKay died in 186–; and that petitioner's husband, Hugh McKay, died in 1891. This petition was filed on March 25, 1895. George McKay's answer to this suit was filed on April 16, 1895, several months before the execution of the mortgage from Julia McKay to Johnson, the plaintiff in fi. fa. In his answer he admitted possession of the 1,143 acres, claiming that right of possession and title vested in him under the contract of 1856 and the will of his father on the death of Hugh McKay, petitioner's husband, without children. On October 19, 1896, there was a verdict finding "for the defendant the premises in dispute covered by the declaration." A decree was entered accordingly, but the land was described as 1,123 acres more or less; and instead of following the petition and contract, naming the coterminous proprietors as they existed in 1856, the decree gave the names of the coterminous proprietors as they existed at the time it was entered. This appears from the testimony of a witness, Tom Gordon, who shows that the adjoining landowners as described in the decree would have been a good.description of the entire tract of which Hugh McKay died in possession. And by other evidence in the case it appears that the Bazemore and Emerson places were included in the land of which he died possessed. In the decree there was an order that the defendant pay cost. The claimant relied on the decree, the contract of 1856, the will of Hugh McKay Sr., and offered evidence to show that George McKay, the claimant's testator, was in possession of the 1,143 acres containing the Bazemore and Emerson places at the time of the execution of the mortgage. He offered evidence that one of the places was not cleared, that the other one was rented, and that George McKay collected the rent for 1895.

There have been three trials in the case. The plaintiff in fi. fa. made a motion for a new trial, on the ground that the verdict was contrary to law and to evidence; and because the court erred: (1) In the charge on the subject of lis pendens and the notice by the suit between Julia McKay and George McKay. (2) In allowing parol evidence to be considered to show that the Bazemore and Emerson places were included in the property therein referred to, movant contending that the suit would

only be notice affecting him if it on its face showed that the Bazemore and Emerson places formed a part of the subject of the controversy.     (3)  In  refusing  to  permit  Johnson  to  testify that he had no actual notice of the suit.     (4)  In  excluding the evidence of Johnson that he knew where the lines of the home place were; that Hugh McKay showed him the lines.     (5)  In admitting the evidence of Major Jones (on cross-examination): "I only know what Chiles surveyed from what Henry McKay told me.    According to what Henry showed me he was not on the Emerson line."    This was objected to as hearsay.    The motion was overruled, and the plaintiff excepted.

*Hardeman & Moore* and *R. N. Hardeman*, for plaintiff.
*Johnson & Johnson*, contra.

LAMAR, J. (After stating the foregoing facts.)    The mortgage of 1895 described the property as in the deeds of 1848 and 1854. Neither of these deeds gave corners, courses, lines, or distances. One did not name the adjoining landowners, and the other gave the coterminous proprietors as they existed in 1848.    Naturally in half a century there had been great and radical changes in this regard.    And while the descriptions in neither the deeds nor the mortgage were void, as ruled when the case was here before (119 *Ga.* 196), yet it was necessary to resort to extrinsic evidence to show that the land levied on was that described in the fi. fa. Whether this burden was carried in the first instance by the plaintiff, or whether it was rebutted by the claimant's testimony, was a question for the jury.    The inherent difficulties of the plaintiff's case in this regard,—the change of coterminous proprietors, the destruction of buildings and fences, the obliteration of old lines, resulting from the lapse of time, were increased by the special obliteration due to the fact that these two lots were included in a still larger tract of 1,143 acres held by the same person for more than 40 years.    While there was some evidence that the Bazemore and Emerson places were in possession of the mortgagor in 1895, that fact really added little to the description, because there was no evidence as to the extent of these places.

The plaintiff in fi. fa. contends that the petition filed in March, 1895, did not operate as notice by way of lis pendens when he took the mortgage in October, 1895, because of the insufficient

description of the land therein sued for, and because the contract of 1856 recited that the division therein alluded to did not affect lands *previously acquired* by either of the sons. He claims that it could not apply to the Bazemore and Emerson places, because the deeds to those two tracts had been made to Hugh McKay in 1848 and 1854. The fact that Hugh McKay had acquired these two places before 1856 necessarily leads to the conclusion that they were excepted out of the agreement. For the petition distinctly alleges that the 1,143 acres had been acquired by Sarah McKay by purchase from various persons with the proceeds of property bequeathed to her for life by her husband. It is entirely possible that she could with these proceeds have bought these very lots from her son Hugh.

Nor was there any error excluding the testimony of the plaintiff that he had no actual knowledge of the suit when he took the mortgage. The very purpose of the rule of lis pendens is to charge with notice in law where there is no notice in fact. Civil Code, § 3936. There was evidence from which the jury could have found that George McKay was in possession of the mortgaged property. That itself was notice. The mortgagee therefore took subject to that notice as well as to the notice imparted by the suit. There is no contention that the decree rendered in that suit was not binding on the mortgagor and the mortgagee unless it was void for collusion. There was no evidence tending to show the existence of any fraud, except that the plaintiff contends that the decree putting the cost on the defendant indicates that there had been a settlement. But the verdict was generally for the defendant. It was an equity case. The costs could therefore be taxed against either party. Civil Code, § 4850. Even if it was improper, only George McKay could complain. Certainly the fact that he was required to pay the costs is not sufficient to avoid a decree otherwise in his favor.

The charge that the description of the land mentioned in the pleadings must have been sufficient to put Johnson upon inquiry as to whether it included the Bazemore and Emerson places was not error against the plaintiff. The petition gave the outside boundaries of the 1,143 acres, and was sufficient to identify the whole tract so as to operate as lis pendens. It was obviously necessary to resort to parol testimony to show that a part was

included in a properly described whole. Rarely, if ever, does a description of an entire tract contain a proper description of a portion in the center of the tract.

There was nothing requiring the grant of a new trial in the exclusion of evidence as to what others had stated to the witness about the line. It is extremely doubtful whether any of the land mortgaged could, under the evidence, have been so marked and identified as to enable it to be properly described by the levying officer in making conveyance as a result of the sheriff's sale. Certainly the mortgage itself contained no such description. But at last the case is controlled by the facts, that the petition of the mortgagor showed that the 1,143 acres was in possession of George McKay claiming title by reason of a certain contract and will; that George McKay filed his answer admitting the possession and asserting the title; and that this petition and answer were filed months before the plaintiff took his mortgage. It further appears that the mortgaged property was a part of the 1,143 acres. There is no proof that the judgment finding that the land belonged to George McKay was the result of fraud or collusion. This judgment bound the mortgagor and the plaintiff, who was in privity with her. Considering the case as a whole, and irrespective of the other assignments of error which could not be controlling, the judgment is　　　*Affirmed. All the Justices concur.*