## ROWLAND *v.* MATHEWS, administratrix.

1. Where a testator, owning land lot No. 61 in the sixth district of Crawford county, devised to his son, H. C. Mathews, 75 acres lying on the east side of said lot; to his daughter, Clyde B. Mathews, 25 acres, being in the center of the lot, and bounded east by the land given to said son, and west by lands given to her sister, Maude R. Mathews; and to his daughter, Maude R. Mathews, 25 acres of land on the west side of said lot, and being all of said lot except a tract including a fish-pond and the two tracts so devised to H. C. Mathews and Clyde B. Mathews: Maude R. Mathews, under said devise, is entitled to all of the land embraced in said land lot, with the exception of the three tracts excepted from the devise to her.

2. Where a particular description is repugnant to the general description of a devised tract of land, the former yields to the latter, and the particular description will be treated as surplusage, under the maxim *falsa demonstratio non nocet*.

3. Under the pleadings and the evidence the court erred in directing a verdict for the defendant.

No. 2936.    JULY 15, 1922.

Complaint for land. Before Judge Malcolm D. Jones. Crawford superior court. October 17, 1921.

Maude R. Rowland filed her petition against Cora L. Mathews as administratrix of W. H. Mathews, and made this case: W. H. Mathews died testate. His will was duly proved in solemn form, and Cora Mathews was duly appointed, and qualified, as administratrix with the will annexed of his estate. By his will the testator disposed of his estate as follows: " To my son, H. C. Mathews, 75 acres land, it lying and being on the east side of land lot (No. 61) sixty-one in the 6th district. Also, to my daughter, Clyde B. Mathews, 25 acres, it being in the center of land lot No. (61) sixty-one, bounded east by the land given to her brother, H. C. Mathews, and west by land given to her sister, Maude R. Mathews. Also, to my daughter, Maude R. Mathews, 25 acres land, west side land lot (No. 61) sixty-one, and being all of said lot except tract including the fish-pond about — acres and the two tracts given to her brother and sister, H. C. and Clyde B. Also the remainder of my estate, both real and personal (not given above), to my wife, Cora Mathews, and her minor children." Petitioner is the daughter of testator, named in his will as Maude R. Mathews, she having married H. S. Rowland since its execution. Her father in his will devised to her 100 acres of land, more or less, being the west half of lot of land No. 61 in the 6th district of Crawford county, and

54

being all of said lot except 100 acres off the east half thereof, devised by her father to her brother, H. C. Mathews, and her sister, Clyde B. Brown, and two acres covered by a fish-pond in the extreme west edge of said lot. Twelve months have elapsed since the qualification of said administratrix, and all debts of the estate have been paid. Petitioner has often demanded of the administratrix that she assent to petitioner's said special legacy aforesaid, and deliver possession thereof to her, and as often said administratrix has failed and refused to assent thereto or deliver possession thereof. Said administratrix contends that your petitioner is entitled to only 25 acres of land in the west half of said lot, next adjoining the tract bequeathed to her sister, Clyde B. Brown. Petitioner has declined and still declines to accept said 25 acres of land in satisfaction of said legacy. The administratrix is in possession of said 100 acres of land devised to petitioner, except 25 acres thereof, which she abandoned and tendered to petitioner as the latter's legacy under said will. The administratrix claims that 75 acres of said land lot, more or less, was devised under said will to her and her minor children; and she holds possession of the same as administratrix aforesaid against your petitioner, claiming the same as aforesaid. The rental value of said tract of land devised to petitioner is $200 per year; and said administratrix has held possession of said tract of land and willfully refuses without lawful warrant or authority to assent to said legacy and deliver said land to petitioner since January 1, 1919. The condition of said estate is such as to require the administratrix to assent to said legacy and deliver said land to petitioner. Petitioner was entitled to receive her legacy from the administratrix on January 1, 1919. By the wilful refusal of the administratrix to assent to said legacy and deliver said land to petitioner, the same being a special legacy, said administratrix became indebted to petitioner for the rent of said land, and mesne profits thereof in the sum of $200 per year, which she has held and still withholds. Petitioner prayed that the court construe the will of the testator, and decree that by his will he devised to her said 100 acres of land, more or less, being the west half of lot 61 in the 6th district of said county, and being all of said lot of land except the two tracts devised to H. C. Mathews and Mrs. Clyde B. Brown, and two acres, more or less, covered by a fish-pond. She further prayed for the recovery of said land and for mesne profits.

In her answer the administratrix admitted the execution and probate of the will of the testator, and that she was the duly appointed and qualified administratrix of his estate, with the will annexed. She admitted that the plaintiff was the daughter of the testator, but averred that she was married to her husband several years prior to the execution of his will. She denied that the testator had devised to the plaintiff the tract of land sued for; and alleged that he had only devised to her 25 acres, as clearly appears from his will. She admitted that all the debts of the testator had been paid, that she had refused to turn over to the plaintiff the tract of land sued for, and that she contended that petitioner is entitled to only 25 acres of land in the west half of lot No. 61, adjoining the tract bequeathed to her sister. She admitted that the plaintiff had declined to accept 25 acres of said land in satisfaction of her legacy. She further admitted that she was in possession of all of the tract of land sued for, except 25 acres, which she tendered to petitioner as her legacy under said will. She claimed 75 acres, more or less, of said lot under said will for herself and minor children. She denied that the rental value of said land was $200 per annum, and alleged that it was not more than $2.50 per annum.

The case came on for trial, and the plaintiff introduced the will of the testator, the pertinent part of which is set out above. H. L. Rowland, for plaintiff, testified that he married Maude, the daughter of the testator. The administratrix had not delivered his wife 75 acres of lot No. 61 since this suit was brought. She let her have 25 acres when they ran the line and divided it themselves. The testator had a conversation with him before his death, about what he was going to do with his property, and said he was going to give it to his children. He had three children by his first wife, petitioner, Clyde, and H. C. Mathews. The testator told witness that he was going to give lot of land No. 61 to his three children. They were on the part of the land the wife is now claiming. Lot No. 61 contains 202 1/2 acres. That 75 acres of land is worth, he supposes, $2.50 per acre per year. The fish pond covers a small piece, he supposes not over a half acre, and is situated just above the dwelling-house, right east of the house. Claude got the east part of lot 61, Clyde got next to that, and petitioner got next to that 25 acres. The fish-pond is on what she now claims, and

covers from a half to three quarters of an acre.— Cross-examination: On the land petitioner claims there are about three or four acres cleared, worth about $2.50 per acre for rent. Had a talk with Mr. Mathews two or three years after we were married, thirteen years ago. We married in 1908. Don't know whether the conversation could have been later than 1910 or 1911 or not. Don't know how long he had been married to his present wife. Neither one of his minor children had been born at that time. He said he was going to give to Clyde, Claude, and Maude the east half of lot of land No. 61. He did not say anything about leaving Mrs. Mathews the fish-pond. Both girls were married at that time. Does say that his wife, Mrs. Brown, Mrs. Mathews, and Claude Mathews ran the dividing line. They say Mrs. Brown has 25 acres. Petitioner sold the 25 acres she got to Mr. Murry Giles. A deed was made to the 25 acres.

F. F. Hardy, for the plaintiff, testified: Knew the deceased. He had three children by his first wife, Maude, Clyde, and Claude. Mr. Mathews talked to me about how he was going to dispose of his property. He stated he wanted his three oldest children by his first wife to have this 200 acres of land. He told me that several times. He did not say what he was going to do with his other property. Had two lots that lay side by side in a body, and the dwelling-house was on the western lot. Have seen the fish-pond near his dwelling-house many times, and it is about 100 yards distant. The fish-pond takes up, he supposes, a half or three quarters of an acre. Mr. Mathews never told him that he had changed his mind about what he was going to give to his older children. The dwelling-house is not far from the lines of these two lots, about thirty or fifty yards at the outside, to the east line of the western lot. There are no fences around the home place, except a hog pasture, which runs back and crosses over to lot No. 61.— Cross-examination: He lives in Houston now, but at the time he had the conversation with Mr. Mathews he lived at Zenith, eight or nine miles from here. He moved away in the fall of 1915. Remembers seeing the two youngest children when he went over to Mr. Mathews. They were small, and something like three or four or five years old. He had different conversations about the disposition of his property, several times after he married his second wife; and every time he got with me he would tell me about

it. There were some six, seven, eight, or ten acres of sandy land cleared on the west side of lot No. 61, which was worth something like $1.50 per acre for rent.

H. C. Mathews, for plaintiff, testified: I am the son of the testator, the oldest child. My mother died, and my father married a second time. His children by his first wife were witness, Mrs. Brown, and Mrs. H. L. Rowland. He had two children by his second marriage. After his children by his second marriage were born, he said something to me once about this lot. Understood him to say he was going to give the entire lot No. 61 to his first set of children. The executrix assented to the legacy of 75 acres to me. She gave Clyde 25 acres off of lot No. 61. The fish-pond occupies about half an acre, I suppose, and it is situated right next to the dividing line of lots 61 and 62. The spring branch that makes the fish-pond rises upon the lot upon which the dwelling-house is situated. All the pond is situated on lot No. 61. The property my father owned besides lot No. 61 was a mule, horse, hogs, buggy, wagons, and another lot of land.— Cross-examination: Know of one patch of cultivated land, an acre or an acre and a half on lot No. 61, and this field runs on lot No. 62. Since I come to think of it there is something like eight acres or more, and this field is partly on 61 and partly on 62, and has a fence on it connecting lot with fences over on lot No. 62. About half that field is on lot No. 61, and it runs up near the house.

A. M. Giles, for plaintiff, testified: Know where the fish-pond is. It is on the lot of land, part of which I bought from Mr. Rowland recently. It is about 200 or 250 yards from the Mathews-house, and covers about a half acre. It is 43 yards across the dam, 75 yards out, and 25 yards across the upper part. The branch rises on the west of lot No. 61. The fish-pond is right below the hog lot. The fish-pond starts at the line, and the hog lot is on the west of it. I bought Mrs. Rowland's 25 acres. Gave $140 for it. There is a wire fence, but can not tell how much of lot No. 61 it takes in.— Cross-examination: This wire fence embraces, I think, the part of the tract all around the house there, goes back around the tract cleared on the 25 acres I bought from Mr. Rowland, and has been doing that for the past ten years. The fence was moved off the 75 acres to the 25 acres as soon as I bought it. I suppose the wire fence includes seven or eight acres around the house.

The inventory and appraisement of the estate of the testator, consisting of lots of land Nos. 61 and 62 in the 6th district of Crawford county, containing 202 1/2 acres each, one mule, one horse and buggy, household furniture, hogs, wagons, and other items of personalty, including a small sum of money, was introduced in evidence.

At the conclusion of plaintiff's testimony, the court, on motion, directed the jury to return a verdict for the defendant, which was done. Judgment was accordingly entered. The plaintiff assigned error on the grounds that the judgment was contrary to law and to the evidence, and that the court erred in not submitting the case to the jury.

*John P. Ross,* for plaintiff.    *C. L. Shepard,* for defendant.

HINES, J. (After stating the foregoing facts.) The court takes judicial cognizance of the fact that land lot No. 61 in the sixth district of Crawford county, Georgia, contains 202 1/2 acres, and is in the form of a square. *Huxford* v. *Southern Pine Co., 124 Ga.* 181 (3), 187 (52 S. E. 439) ; *Payton* v. *McPhaul, 128 Ga.* 510, 514 (58 S. E. 50, 11 Ann. Cas. 163). The devise by the testator to his son, H. C. Mathews, of 75 acres of land lying and being on the east side of land lot No. 61, is sufficiently certain to embrace such a parallelogram as would result from drawing a line across the entire lot, parallel with its eastern boundary, so as to cut off 75 acres. *Gress Lumber Co.* v. *Coody, 94 Ga.* 519 (21 S. E. 217) ; *Vaughn* v. *Fitzgerald, 112 Ga.* 517 (2), 519 (37 S. E. 752) ; *Payton* v. *McPhaul,* supra ; *Osteen* v. *Wynn, 131 Ga.* 210 (62 S. E. 37, 127 Am. St. R. 212) ; *Phillips* v. *Paul, 148 Ga.* 104 (95 S. E. 969).

The devise to his daughter, Clyde B. Mathews, of 25 acres, being in the center of land lot No. 61, bounded east by land given to her brother, H. C. Mathews, and west by land given to her sister, Maude R. Mathews, is not so definite and clear as is the description of the land given to the son. This tract is described, in part, as " being in the center of land lot No. (61) sixty-one." *Center* is here used not in its strict and scientific sense but in the sense of *middle,* and as something between two other objects. In every-day speech we often refer to an object between two other objects as the one in the center, although such object is not at the midpoint. It is in this sense that the word is used in this devise. If this were the

sole description of this tract, it would mean a circle, square, or parallelogram whose midpoint would be- the geometrical center of the land lot; but other boundaries of this tract are given. It is bounded on the east by the land given to the brother, H. C. Mathews, which is fully and definitely described, as we have shown above. It is likewise described as bounded on the " west by land given to her sister, Maude R. Mathews." It is impossible to locate this tract of 25 acres in the center of the land lot, in the strict sense of that word, and have it bounded on the east by the lands of H. C. Mathews, and on. the west by the land of complainant. Treating this word as used in its loose, colloquial sense, the difficulty is relieved. If used in its strict sense, then this particular description would be repugnant to the general description of the land devised, and would have to be rejected. Rejecting the part of the description which locates this tract in the center of the land lot, and. adopting the above rule applicable to the location of a given number of acres to be cut from the side of the land lot, we can arrive at the proper location of this tract. The eastern boundary being given, the same being a straight line across the land lot from north to south, this tract would consist of such a parallelogram as would result from drawing a line across the lot parallel with this eastern boundary, so as to cut off 25 acres. So by either treating this word as used in the sense of between, or, if used in its strict sense, by rejecting the particular description as repugnant to the general description of the land in this devise, we can locate it.

However, we are not concerned with the proper location and description of the tract given to the daughter, Clyde B. Mathews.

The tract given to the petitioner is described as " 25 acres land, west side land lot (No. 61) sixty-one, and being all of said lot except tract including the fish-pond about — acres, and the two tracts given to her brother and sister, H. C. and Clyde B." It is insisted that under this description only 25 acres of land were given to petitioner. This would be true, beyond doubt, if the description had consisted only of 25 acres of land on the west side of this land lot. In that case it would have been such a parallelogram as would result from drawing a line across the lot parallel with its western boundary so as to cut off 25 acres. There are other descriptions given. The land devised to petitioner is described as " being all

of said lot except tract including the fish-pond about — acres, and the two tracts given to her brother and sister, H. C. and Clyde B." Here is a general description of the land devised to the petitioner. The tract of land given to her embraces all of the land lot except the three tracts therein described. If the petitioner got only 25 acres of this land, she would not get all of the lot after taking out the three tracts excepted in the devise to her. The number of acres in the tract including the fish-pond is not given. The parol evidence on this subject discloses that the fish-pond embraces less than an acre of land, and there is no proof that there was a tract known as the fish-pond tract of any given number of acres. If only 25 acres were cut off for the petitioner, on the west side of this lot, it would not reach the 25 acres of Clyde B. Mathews. This would be an impossibility. The land of the petitioner is bounded on the east by the land given to Clyde B. Mathews. The general description of the tract given to petitioner is that it includes all the land lot except the excepted three named tracts. She would not get all of this lot, after deducting these three exceptions, if she were only given 25 acres on the west side of the lot. The clause as to the quantity of the land is simply a part of its description. *Kendall* v. *Wells,* 126 *Ga.* 343 (55 S. E. 41). The particular description of this lot as containing 25 acres is a false description of the tract given to the petitioner. As such it should be rejected as surplusage, under the maxim, "falsa demonstratio non nocet." *Johnson* v. *McKay,* 119 *Ga.* 196 (45 S. E. 992, 100 Am. St. R. 166). Rejecting this particular description, which can not be applied to the tract of land given to the petitioner, and applying the general description thereof, the plaintiff is entitled to all of said land lot except the three named tracts. This would give her 100 acres on the west side of the lot. This construction is in consonance with the declared purpose of the testator. He had been twice married. By his first wife he had three children. By his second wife he had two children. He owned two land lots, being 61 and 62. He declared his intention to give to his three children by his first wife land lot No. 61. This intention seems to have been carried out by his will. Under the above construction he carried out this purpose, with the exception of the fish-pond, which was close to his residence, which was on lot No. 62, and which exception is void for lack of sufficient description.

So we think the court erred in directing a verdict under the pleadings and evidence for the defendant.

*Judgment reversed. All the Justices concur.*